## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF LOUISIANA

```
-------------------------------------------------------------x
In re                               :   Chapter 11 Case No.
                                    :   09-13964
First Mesa Tankships, LLC[1]        :   Section "B"
                                    :   Jointly Administered
              Debtors              :
-------------------------------------------------------------x
```

### JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR FIRST MESA TANKSHIPS, LLC, KEET SEEL TANKSHIPS, LLC AND DOS RAVEN TANKSHIPS, LLC DATED AS OF MAY 7, 2010

**Nothing contained herein shall constitute an offer, acceptance or a legally binding obligation of the Debtors or any other party in interest and this Plan is subject to approval of the Bankruptcy Court and other customary conditions. This Plan is not an offer with respect to any securities. This is not a solicitation of acceptances or rejections of the Plan. Acceptances or rejections with respect to this Plan may not be solicited until a disclosure statement has been approved by the United States Bankruptcy Court for the Eastern District of Louisiana. Such a solicitation will only be made in compliance with applicable provisions of securities and/or bankruptcy laws. YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE (INCLUDING IN CONNECTION WITH THE PURCHASE OR SALE OF THE DEBTORS' SECURITIES) PRIOR TO THE APPROVAL OF THIS PLAN BY THE BANKRUPTCY COURT.**

Dated: May 7, 2010

**HELLER DRAPER HAYDEN PATRICK & HORN LLC**
Counsel for Debtors and Debtors In Possession
650 Poydras Street – Suite 2500
New Orleans, LA  70130
Telephone:  504-299-3300
Facsimile:  504-299-3399

---

[1]        Dos Raven Tankships, LLC (09-13966) and Keet Seel Tankships, LLC (09-13965), together with First Mesa Tankships, LLC (collectively referred to as "Debtors"), are being jointly administered pursuant to a Court Order entered December 3, 2009 [P-7].

# TABLE OF CONTENTS

ARTICLE 1 - DEFINITIONS AND INTERPRETATION ……………………... 2

ARTICLE 2 - ADMINISTRATIVE EXPENSES, FEE CLAINS,
U.S. TRUSTEE FEES AND PRIORITY CLAIMS……………...16

2.1     Administrative Expense Claims.................................................16
2.2     Fee Claims ................................................................................17
2.3     U.S. Trustee Fees ......................................................................18
2.4     Priority Claims ..........................................................................18

ARTICLE 3 - CLASSIFICATION AND TREATMENT OF CLAIMS AND
INTERESTS………………………………………………….. 18

3.1     Classification of Claims and Interest ........................................18

3.1.A.  Classified Claims ..........................................................................19
3.1.A.1 Class 1 Claim of STUSCO...........................................................19
3.1.A.2 Class 2 Claim of AMA.................................................................19
3.1.A.3 Class 3 Claim of Jamestown ........................................................19
3.1.A.4 Class 4 Claim of Houma ..............................................................20
3.1.A.5 Class 5 Claim of VT Halter..........................................................20
3.1.A.6 Class 6 Claim of Conrad ..............................................................20
3.1.A.7 Class 7 Claim of Beacon ..............................................................21
3.1.A.8 Class 8 Claim of Top Coat ...........................................................21
3.1.A.9 Class 9 Claim of Havard ..............................................................21
3.1.A.10 Class 10 Other Secured Claims..................................................22
3.1.A.11 Class 11 Unsecured Claims........................................................22

3.1.B.  Classified Interests ........................................................................22

3.1.B.1 Class 12 Interests.........................................................................22

ARTICLE 4 - ACCEPTANCE OR REJECTION OF THE PLAN......................23

4.1     Class Acceptance Requirement..................................................23
4.2     Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code
or "Cramdown.............................................................................23
4.3     Elimination of Vacant Classes ..................................................23

ARTICLE 5 – MEANS AND IMPLEMENTATION ...........................................23

5.1     Approval and Implementation of Settlement Agreement .............23

i

| | | |
|---|---|---|
| 5.2 | Sale or Liquidation of Assets | 24 |
| 5.3 | Plan Funding | 25 |
| 5.4 | Continued Corporate Existence and Vesting of Assets | 25 |
| 5.5 | Cancellation of Credit Agreements, Existing Securities and Agreement | 26 |
| 5.6. | Corporate Governance | 26 |
| 5.7. | Plan Administrator | 27 |
| 5.8. | Plan Advisory Committee | 28 |
| 5.9. | Rights and Duties of the Plan Advisory Committee | 28 |
| 5.10. | Wind Down of the Debtors' Estates | 29 |
| 5.11. | Assumed Liabilities | 30 |
| 5.12. | Cancellation of Certain Security Interests | 30 |
| 5.13. | Managers, Officers and any Boards of Directors | 30 |
| 5.14. | Corporate Action | 31 |
| 5.15. | Comprehensive Settlement of Claims and Controversies | 31 |

ARTICLE 6 - DISTRIBUTIONS .................................................................. 31

| | | |
|---|---|---|
| 6.1. | Distributions | 31 |
| 6.2. | No Postpetition Interest on Claims | 32 |
| 6.3. | Date of Distributions | 31 |
| 6.4. | Distribution Record Date | 32 |
| 6.5. | Disbursing Agent | 32 |
| 6.6. | Delivery of Distribution | 32 |
| 6.7. | Unclaimed Property | 33 |
| 6.8. | Reserve Accounts | 33 |
| 6.9. | Satisfaction of Claims and Interests | 33 |
| 6.10. | Manner of Payment Under Plan | 33 |
| 6.11. | Fractional Costs | 33 |
| 6.12. | No Distribution in Excess of Amount of Allowed Claim | 33 |
| 6.13. | Setoffs and Recoupments | 33 |
| 6.14. | Rights and Powers of Disbursing Agent | 34 |
| 6.15. | Withholding and Reporting Requirements | 34 |

ARTICLE 7 – PROCEDURES FOR RESOLVING CLAIMS ............................ 35

| | | |
|---|---|---|
| 7.1 | Objections to Claims | 35 |
| 7.2 | Disputed Claims | 35 |
| 7.3 | Estimation of Claims; Certain Reserves | 36 |
| 7.4 | Directors' and Officers' and Managers' Claims | 36 |
| 7.5 | No Recourse | 36 |
| 7.6 | Expenses Incurred On or After the Effective Date | 37 |

ARTICLE 8 – EXECUTORY CONTRATS AND UNEXPIRED LEASES ........ 37

| | | |
|---|---|---|
| 8.1 | General Treatment | 37 |

8.2     Claims Based on Rejection of Executory Contracts or Unexpired
        Leases..................................................................................38
8.3     Cures of Defaults for Assumed Executory Contracts and Unexpired
        Leases..................................................................................38
8.4     Compensation and Benefit Programs.............................................39

ARTICLE 9 – CONDITIONS PRECEDENT TO CONSUMMATIONOF THE
        PLAN .................................................................................40

9.1     Conditions Precedent to Confirmation..........................................40
9.2     Conditions Precedent to the Effective Date ...................................40
9.3     Filing Notice of Effective Date.....................................................41

ARTICLE 10 – EFFECT OF CONFIRMATION .................................................41

10.1    Binding Effect...........................................................................41
10.2    Vesting of Assets ......................................................................41
10.3    Term of Pre-Confirmation Injunctions or Stays ...........................41
10.4    Injunction Against Interference With Plan ....................................41
10.5    Injunction ................................................................................42
10.6    Releases...................................................................................42
10.7    Exculpation and Limitation of Liability .......................................44
10.8    Injunction Related to Releases and Exculpation............................44
10.9    Retention of Causes of Action/Reservation of Rights ..................44
10.10   No Successor Liability................................................................44

ARTICLE 11 – RETENTION OF JURISDICTION .............................................45

ARTICLE 12 - MISCELLANEOUS PROVISIONS ............................................46

12.1    Surrender of Instruments............................................................46
12.2    Exemption from Certain Transfer Taxes ......................................47
12.3    Retiree Benefits........................................................................47
12.4    Dissolution of Creditors' Committee............................................47
12.5    Amendments ............................................................................47
12.6    Revocation or Withdrawal of this Plan.........................................48
12.7    Allocation of Plan Distributions Between Principal and Interests.48
12.8    Severability ..............................................................................48
12.9    Governing Law .........................................................................49
12.10   Section 1125(e) of the Bankruptcy Code......................................49
12.11   Inconsistency............................................................................49
12.12   Successors and Assigns..............................................................49
12.13   Time    ......................................................................................49
12.14   Exhibits ...................................................................................49
12.15   Notices ....................................................................................49
12.16   Reservation of Rights................................................................50

# INTRODUCTION[2]

First Mesa Tankships, LLC, Keet Seel Tankships, LLC and Dos Raven Tankships, LLC, Debtors and Debtors in possession in these bankruptcy cases under chapter 11 of the Bankruptcy Code, propose the following Joint Chapter 11 Plan ("Plan") with respect to each of their Bankruptcy Cases. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties and operations, risk factors, a summary and analysis of this Plan, and certain related matters including, among other things, certain tax matters, the sale or disposition of the Debtors' assets and the consideration to be issued and/or distributed under this Plan.

All Persons are encouraged to read the Plan and the Disclosure Statement and their respective exhibits in their entirety before voting to accept or reject the Plan. No materials other than the Disclosure Statement and the respective exhibits attached thereto and referenced therein have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

## ARTICLE I.

## DEFINITIONS AND INTERPRETATION

A.    *Definitions.*

The following terms shall have the meanings set forth below (such meanings to be equally applicable to both the singular and plural):

1.1.    ***Administrative Expense Claim*** means a claim for costs and expenses of administration of the Bankruptcy Cases under section 503(b) (including "substantial contribution" claims under section 503(b)(3) and (4)) of the Bankruptcy Code entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code.

1.2.    ***Administrative Expense Claims Bar Date*** means the deadline for filing an Administrative Expense Claim established pursuant to Section 2.1 of this Plan or any other order of the Bankruptcy Court.

1.3.    ***AHL*** means AHL Shipping Company.

1.4.    ***AHLPT*** means AHL Product Tankers, LLC.

1.5.    ***Allowed*** shall mean with respect to any Claim against or Interest in any Debtor, a Claim or Interest (a) proof of which is timely Filed (or by order of the Bankruptcy Court or as otherwise provided herein is not required to be Filed), (b) that is listed by such Debtor in its Schedules as liquidated in amount, non-disputed and non-contingent and for which no proof of claim has been Filed, or (c) expressly allowed pursuant to this Plan or any Final Order of the

---

[2]    All capitalized terms used but not defined herein have the meanings set forth in Article I herein.

Bankruptcy Court; and, in each case with respect to (a) and (b) above, either (i) no objection (or an amendment of the Schedules with respect thereto) to its allowance, amount, or classification has been interposed within the applicable period for filing same fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or (ii) such objection (or an amendment of the Schedules with respect thereto), if so interposed, has been determined and fixed by a Final Order (but only to the extent so determined and fixed and not where fixed and allowed solely for purposes of voting to accept or reject the Plan).  Claims that are not Allowed or are disallowed by Final Order or otherwise, including those disallowed under section 502(d) of the Bankruptcy Code, shall not be Allowed Claims.

1.6.    ***Allowed Claim or Allowed Interest*** means, a Claim or Interest to the extent that it has been Allowed.

1.7.    ***AMA*** means Atlantic Marine Alabama, LLC.

1.8.    ***AMA Claims*** means the Proof(s) of Claim filed by AMA on February 24, 2010, against First Mesa Tankships, LLC, Dos Raven Tankships, LLC, and Keet Seel Tankships, LLC (Claim Nos. 25, 16 and 17, respectively) (collectively with the AMA Texas State Suit, the AMA Adversary Proceeding, any AMA claims the Debtors scheduled, and any other claims AMA may have against the Debtors) asserting claims against the Debtors in the Bankruptcy Cases that in the aggregate exceed $74,692,105.

1.9.    ***AMA Adversary Proceeding*** means adversary proceeding number 09-01176, filed on December 9, 2009 in the Bankruptcy Court by AMA against First Mesa Tankships, LLC, Dos Raven Tankships, LLC, and Keet Seel Tankships, LLC, asserting, *inter alia*, title to and/or first-priority lien rights against certain Sale Assets in AMA's possession.

1.10.    ***AMA Texas State Suit*** means the suit filed on November 18, 2009 in the 281st Judicial Court of Harris County, Texas, case number 2009-72419, by AMA against First Mesa Tankships, LLC, Dos Raven Tankships, LLC, Keet Seel Tankships, LLC, and AHL, asserting, *inter alia*, title to and/or first-priority lien rights against certain Sale Assets in AMA's possession.

1.11.    ***APA*** means either: (i) the Stalking Horse Agreement; or (ii) any other asset purchase agreement(s) that the Debtors or, if after the Effective Date, the Reorganized Debtors, may execute with a Person that submits the highest or otherwise best bid for all or part of the Sale Assets and, with respect to both (i) and (ii), is approved or confirmed by the Bankruptcy Court.

1.12.    ***Assets*** means all of the right, title and interest of the Debtors pursuant to section 541 of the Bankruptcy Code in and to property of whatever type or nature (real, personal, mixed, intellectual, tangible or intangible), including Causes of Action, Sale Assets, Non-Sale Assets, and all other property of the Debtors.

1.13.    ***Assumed Liabilities*** means any liabilities of the Debtors, including any executory contracts, assumed by a Purchaser in accordance with an APA or order of the Bankruptcy Court.

{00303527-2}                                      3

1.14.   ***Auction*** means the auction for the Sale Assets to be held in accordance with the Auction Sale Order, as necessary.

1.15.   ***Auction Sale Order*** means the order entered on the Bid Procedures Motion.

1.16.   ***Avoidance Actions*** means all of the Debtors' and the Estates' rights and claims under sections 547 through 553 of the Bankruptcy Code, inclusive, or under any similar or related state or federal statute or common law, whether or not an action is initiated before or after the Effective Date.

1.17.   ***Ballot*** means the form to be distributed with the Disclosure Statement to each holder of an Impaired Claim on which the holder is to indicate acceptance or rejection of the Plan.

1.18.   ***Balloting Deadline*** means the date and time, as set by an order of the Bankruptcy Court, by which all Ballots must be received in order to be counted for purposes of voting on the Plan, as such date may be extended by an order.

1.19.   ***Bankruptcy Cases*** mean these cases for relief filed by the Debtors under Chapter 11 of the Bankruptcy Code, which have been consolidated for joint administration as Case No. 09-13964 (JAB), Section "B," (Jointly Administered).

1.20.   ***Bankruptcy Code*** means Title 11 of the United States Code, or the Bankruptcy Reform Act of 1978, as amended.

1.21.   ***Bankruptcy Court*** means the United States Bankruptcy Court for the Eastern District of Louisiana, or any other court exercising competent jurisdiction over the Bankruptcy Cases or any proceeding therein.

1.22.   ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Bankruptcy Cases, and any Local Rules of the Bankruptcy Court.

1.23.   ***Bar Date*** means the deadline for filing proofs of Claim that arose or are deemed to arise on or before the Petition Date, as established by the Bar Date Order, the Plan or other order of the Bankruptcy Court.

1.24.   ***Bar Date Order*** means that certain Order [P-105], dated January 22, 2010, entered by the Bankruptcy Court, establishing February 24, 2010, as the last date to (i) assert Claims against the Debtors that arose or are deemed to arise on or before the Petition Date; and (ii) assert ownership interests in any property of for the Debtors.

1.25.   ***Bid Procedures*** means the bid procedures for the Sale, as set forth in the Auction Sale Order.

1.26.   ***Bid Procedures Motion*** means the motion of the Debtors seeking an order: (i)

approving the Bid Procedures with respect to the sale of the Sale Assets; (ii) approving the Stalking Horse Bidder and bid protections with respect to a Stalking Horse Bidder; (iii) approving the assumption, assignment and/or transfer procedures with respect to executory contracts or unexpired leases of the Debtors; and (iv) as may be necessary, scheduling an auction and approving the form and manner of notice thereof (with the Bid Procedures Motion and items (i) through (iv) being in form and substance acceptable to the Settling Secured Creditors).

1.27.    ***Beacon*** means Beacon Maritime, Inc.

1.28.    ***Beacon Claims*** mean the Proof(s) of Claim filed by Beacon on February 24, 2010, against each of First Mesa Tankships, LLC and Keet Seel Tankships, LLC (Claim Nos. 23 and 15, respectively) (collectively with any Beacon claims the Debtors scheduled, and any other claims Beacon may have against the Debtors) asserting claims against the Debtors in the Bankruptcy Cases, with such amounts totaling in excess of $279,598.69.

1.29.    ***Broker*** means Compass Maritime Services LLC, or any successor thereto, approved by the Court to market the Sale Assets.

1.30.    ***Business Day*** means any day other than a Saturday, Sunday or federal holiday in the United States.

1.31.    ***Cash*** means legal tender of the United States of America.

1.32.    ***Causes of Action*** shall mean, without limitation, any and all claims, actions, causes of action, liabilities, obligations, rights, suits, accounts, debts, sums of money, damages, judgments, claims and demands, actions, defenses, offsets, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whatsoever, whether known or unknown, suspected or unsuspected, whether arising prior to, on or after the Petition Date, in contract or tort, in law, equity or otherwise, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured and whether asserted or assertable in favor of the Debtors, their Estates or the Reorganized Debtors. For avoidance of doubt, Causes of Action include, but are in no way limited to, claims or rights to (a) damages, (b) the recovery of monies, (c) lien avoidance, subordination, surcharge, recharacterization, rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law, (d) tax refunds, (e) injunctive, equitable, or other relief, (f) claims pursuant to section 362 of the Bankruptcy Code, (g) such claims and defenses as fraud, mistake, duress, and usury, (h) Avoidance Actions, and (i) all causes of action that may be directly or derivatively asserted on behalf of the Debtors, their Estates, or the Reorganized Debtors.

1.33.    ***Claim*** shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

1.34.    ***Class*** means a category of holders of Claims or Interests classified together pursuant to section 1123(a)(11) of the Bankruptcy Code.

1.35.    ***Class 11 Wind Down Costs*** means the costs and expenses arising on or after the Effective Date in the administration of the Debtors related to Class 11 Unsecured Claims,

including, without limitation, (i) analyzing and pursuing any Unreleased Avoidance Actions, (ii) filing and pursuing objections to Class 11 Unsecured Claims, (iii) liquidating or otherwise disposing of Non-Sale Assets, and/or (iv) making distributions to holders of Allowed Class 11 Unsecured Claims.

1.36.   ***Confirmation Date*** means the date on which the Confirmation Order is entered on the docket of the Bankruptcy Court.

1.37.   ***Confirmation Hearing*** means the hearing held pursuant to section 1128(a) of the Bankruptcy Code at which the Bankruptcy Court considers confirmation of the Plan, including any continuances thereof.

1.38.   ***Confirmation Order*** means the order of the Bankruptcy Court that confirms the Plan.

1.39.   ***Conrad*** means Conrad Industries, Inc. and Conrad Shipyard, L.L.C.

1.40.   ***Conrad Claims*** means the Proof(s) of Claim filed by Conrad on January 22, 2010, against First Mesa Tankships (Claim No. 4) (collectively with any Conrad claims the Debtors scheduled, and any other claims Conrad may have against the Debtors), asserting claims against the Debtors in the Bankruptcy Cases, with such amounts totaling in excess of $677,865.00.

1.41.   ***Creditors' Committee*** means any statutory committee of unsecured creditors appointed in the Bankruptcy Cases in accordance with section 1102 of the Bankruptcy Code, as the same may be reconstituted from time to time.

1.42.   ***Debtors*** means First Mesa Tankships, LLC, Keet Seel Tankships, LLC and Dos Raven Tankships, LLC.

1.43.   ***Debtors in Possession*** means the Debtors between the Petition Date and the Effective Date.

1.44.   ***Disallowed Claim*** means (a) a Claim, or any portion thereof, that has been disallowed by a Final Order or a settlement, (b) a Claim or any portion thereof that is Scheduled at zero or as contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law, or (c) a Claim or any portion thereof that is not Scheduled and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely filed under applicable law.

1.45.   ***Disallowed Interest*** means an Interest or any portion thereof that has been disallowed by a Final Order or a settlement.

1.46.   ***Disbursing Agent*** means, for purposes of making distributions under the Plan, the

{00303527-2}                                           6

Reorganized Debtors or a designee thereof (including the Plan Administrator).

1.47.    **Disclosure Statement** means the Disclosure Statement for the Debtors to accompany the Plan, as modified or amended, approved by the Bankruptcy Court on [_____, 2010].

1.48.    **Disputed Claim or Disputed Interest,** mean any Claim or Interest, that is neither an Allowed Claim nor a Disallowed Claim, or an Allowed Interest nor a Disallowed Interest, as the case may be. In the event that any part of a Claim or Interest is disputed, such Claim or Interest in its entirety shall be deemed to constitute a Disputed Claim or Disputed Interest for purposes of distribution under this Plan unless a Final Order has been entered providing otherwise. Without limiting any of the foregoing, a Claim or Interest that is the subject of a pending objection, motion, complaint, counterclaim, setoff, Avoidance Action, litigation claim or other defense, or any other proceeding seeking to disallow, subordinate or estimate such Claim, shall be deemed to constitute a Disputed Claim or Disputed Interest, as the case may be.

1.49.    **Distribution Date** means: (a) the Initial Distribution Date; (b) any Interim Distribution Date; or (c) the Final Distribution Date, as the context requires.

1.50.    **Distribution Record Date** means, with respect to all Classes, the third (3rd) Business Day after the date the Confirmation Order is entered by the Bankruptcy Court or such other date as shall be established by the Bankruptcy Court in (a) the Confirmation Order or, (b) upon request of the Debtors or the Reorganized Debtors, a separate order of the Bankruptcy Court.

1.51.    **Effective Date** means the first Business Day on which all conditions to the Effective Date set forth in Section 9.2 hereof have been satisfied or waived, (or will be satisfied contemporaneously with or immediately upon the occurrence of the Effective Date) and no stay of the effectiveness of the Confirmation Order is in effect.

1.52.    **Entity** means an individual, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, government, governmental unit (as defined in the Bankruptcy Code) or any political subdivision thereof, or other person.

1.53.    **Estates** means the estates created in the Bankruptcy Cases under section 541 of the Bankruptcy Code.

1.54.    **Fee Claim** means a Claim by a Professional for compensation, indemnification or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) (excluding any fees or expenses under sections 503(b)(3) or (4)) or 1103(a) of the Bankruptcy Code in connection with the Bankruptcy Cases. For the avoidance of doubt, fees or expenses sought under sections 503(b)(3)or (4) are not Fee Claims.

1.55.    **File or Filed** mean filed with the Bankruptcy Court in the Bankruptcy Cases, as reflected on the official docket of the Bankruptcy Court for the Bankruptcy Cases.

1.56.    ***Final Distribution Date*** means the first Business Day twenty (20) days (or such longer period as may be reasonably determined by the Reorganized Debtors) after the date on which all Disputed Claims have been resolved by Final Order and all Assets have been liquidated or otherwise disposed of in accordance with the Plan and on which a final Plan Distribution is made to relevant Allowed Claim holders as required under this Plan.

1.57.    ***Final Order*** means an order or judgment of the Bankruptcy Court or other applicable court as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Debtors or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court or other applicable court shall have been affirmed by the highest court to which such order or judgment was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired, with no further appeal, petition for certiorari or motion for reargument or rehearing pending; *provided, however,* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule of the Bankruptcy Rules, may be filed with respect to such order or judgment shall not render such order or judgment not to be a Final Order.

1.58.    ***Havard*** means Havard's Construction, L.L.C.

1.59.    ***Havard Claims*** means the Proof(s) of Claim filed by Havard on February 12, 2010, against each of First Mesa Tankships, LLC and Dos Raven Tankships, LLC (Claim No. 8) (collectively with any Havard claims the Debtors scheduled, and any other claims Havard may have against the Debtors), asserting claims against the Debtors in the Bankruptcy Cases, with such amounts totaling in excess of $91,594.57.

1.60.    ***Houma*** means Houma Industries, L.L.C. of Georgia.

1.61.    ***Houma Adversary Proceeding*** means adversary proceeding number 10-01018 filed in the Bankruptcy Court on February 12, 2010 by Houma against First Mesa Tankships, LLC, Dos Raven Tankships, LLC, and Keet Seel Tankships, LLC, asserting, *inter alia*, title to and first-priority lien rights against certain Sale Assets in Houma's possession.

1.62.    ***Houma Claims*** means the Proof(s) of Claim filed by Houma on February 10, 2010, against each of First Mesa Tankships, LLC, Dos Raven Tankships, LLC, and Keet Seel Tankships, LLC (Claim Nos. 5, 6  and 4, respectively) (collectively with the Houma Alabama State Suit, the Houma Federal Suit, the Houma Adversary Proceeding, any Houma claims the Debtors scheduled, and any other claims Houma may have against the Debtors) asserting claims against the Debtors in the Bankruptcy Cases, with such amounts totaling in excess of $5,049,870.69.

1.63.    ***Houma Alabama State* Suit** means the suit filed on February 12, 2010 in the Circuit Court of Mobile County, Alabama, case number CV-2009-902287, by Houma against

Dos Raven Tankships, LLC, and AMA, asserting, *inter alia*, rights, liens, and privileges against a power module integrated into the partially completed hull form of the first tanker under construction.

1.64.    ***Houma Federal Suit*** means the suit filed on February 10, 2010 in the United States District Court of the Eastern District of Louisiana, case number 09-cv-07494, by Houma against First Mesa Tankships, LLC, Dos Raven Tankships, LLC, Keet Seel Tankships, LLC, and AHL, asserting, *inter alia*, rights, liens, and privileges against certain property of the Debtors.

1.65.    ***Impaired*** means a Claim or Interest or a Class of Claims or a Class of Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.66.    ***Initial Distribution Date*** means the first Business Day three (3) business days after the Effective Date, or such longer or shorter period as may be reasonably determined by the Reorganized Debtors to make initial Plan Distributions under the Plan.

1.67.    ***Interest*** means any and all "equity securities" (as defined in section 101(16) of the Bankruptcy Code) in a Debtor.

1.68.    ***Interim Distribution Date*** means any date, other than the Final Distribution Date, after the Initial Distribution Date, on which the Reorganized Debtors determine, that an interim distribution should be made to or on account of holders of Allowed Claims, in light of, *inter alia,* resolutions of Disputed Claims, and the administrative costs of such a distribution.

1.69.    ***Jamestown*** means Jamestown Metal Marine Sales, Inc.

1.70.    ***Jamestown Claims*** means the Proof(s) of Claim filed by Jamestown on February 24, 2010, against each of First Mesa Tankships, LLC, Dos Raven Tankships, LLC, and Keet Seel Tankships, LLC (Claim Nos. 20, 12 and 12, respectively) (collectively with any Jamestown claims the Debtors scheduled, and any other claims Jamestown may have against the Debtors) asserting claims against the Debtors in the Bankruptcy Cases based upon superior first priority interest in the superstructure modules, post-petition suspension, maintenance and preservation costs and all rights under applicable law, with such amounts totaling in excess of $8,080,657.23, which is net of the pre-Petition Date drawdowns by Jamestown against the Jamestown Letters of Credit (as defined in the Settlement Agreement).

1.71.    ***Lien*** has the meaning set forth in section 101(37) of the Bankruptcy Code.

1.72.    ***Non-Sale Assets*** means all Assets not constituting either Sale Assets or STUSCO Insurance / Indemnity Rights.

1.73.    ***Other Secured Claims*** means any Secured Claims other than the Secured Claims of the Settling Secured Creditors.

1.74.    ***Payment Reserve Fund*** means a fund in the aggregate amount of the Allowed Secured Claims of the Class 10 Other Secured Claims (as determined by the Bankruptcy Court in

accordance with the Plan) which the Debtors or, if after the Effective Date, the Reorganized Debtors, elect to pay in Cash from the Sale Proceeds pursuant to Article III, Section 10(a)(ii) of this Plan.

1.75.   ***Person*** means any individual, corporation, partnership, association, indenture trustee, limited liability company, organization, joint stock company, joint venture, estate, trust, governmental unit or any political subdivision thereof, Interest holder, or any other Entity or organization.

1.76.   ***Petition Date*** means December 2, 2009.

1.77.   ***Plan*** means this plan of reorganization, either in its present form or as it may be altered, amended, or modified from time to time by the Debtors or the Reorganized Debtors in accordance with the Bankruptcy Code and Bankruptcy Rules.

1.78.   ***Plan Administrator*** means a Person designated by the Debtors acceptable to the Settling Secured Creditors (or any successor thereto appointed pursuant to the Plan) who shall be vested with authority to exercise all rights of the Debtors (and the Plan Administrator) under the Plan.

1.79.   ***Plan Administrator Expenses*** means all actual and necessary costs and expenses incurred on and after the Effective Date in connection with the Wind Down and the administration of the Plan, including, but not limited to, the  costs, expenses and legal fees incurred related to: (i) filing and prosecuting objections to Claims; (ii) investigating, litigating, settling, negotiating, pursuing or otherwise associated with Causes of Action, including, but not limited to, attorneys' fees, accounting fees, expert witness fees, and all costs relating to obtaining and distributing recoveries from such Causes of Action; (iii) performing the duties set forth in the Plan; and (iv) all fees payable pursuant to section 1930 of Title 28 of the United States Code.

1.80.   ***Plan Advisory Committee*** means the committee appointed pursuant to the Plan to oversee the implementation of the Plan.

1.81.   ***Plan Consideration*** means the distributions under the Plan to any holders of Allowed Claims entitled to a distribution under this Plan.

1.82.   ***Plan Distribution*** means the payment or distribution under the Plan of the Plan Consideration.

1.83.   ***Plan Documents*** means the documents, other than this Plan, to be executed, delivered, assumed, and/or performed in connection with the consummation of this Plan.

1.84.   ***Plan Support Agreement*** means the agreement made and entered into as of April 19, 2010, by and among the Debtors, the Settling Secured Creditors and SCS, providing, among other things, for the support of the Plan by the Debtors, the Settling Secured Creditors and SCS on the terms and conditions set forth therein.

1.85.  **Plan Term Sheet** means the agreement dated April 19, 2010, by the Debtors, SCS and the Settling Secured Creditors setting forth the terms of a plan to be supported pursuant to the Plan Support Agreement.

1.86.  **Priority Claim** shall mean any Claim other than Administrative Expense Claims entitled to priority in payment under section 507(a) of the Bankruptcy Code, but only to the extent it is entitled to priority.

1.87.  **Professional** means a Person employed in accordance with sections 327 and/or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code.

1.88.  **Professional Fee Claim** means those fees and expenses claimed by Professionals pursuant to sections 330, 331 or 503 of the Bankruptcy Code, and unpaid as of the Effective Date.

1.89.  **Pro Rata Share** means, with respect to any distribution on account of an Allowed Claim, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims in such Class.

1.90.  **Purchaser** means either: (i) a Stalking Horse Bidder; or (ii) such other Person that submits the highest or otherwise best bid for all or part of the Sale Assets in accordance with the Bid Procedures and/or with whom the Debtors or, if after the Effective Date, the Reorganized Debtors, consummate an APA.

1.91.  **Released Parties** means the Settling Secured Creditors and any other party who is designated as a Released Party under the Plan.

1.92.  **Reorganized Debtors** means the Debtors upon and after the Effective Date. Unless the context requires otherwise, references in the Plan to the "Debtors" with respect to matters occurring or actions to be taken on or after the Effective Date shall mean the "Reorganized Debtors".

1.93.  **Retained Causes of Action** means any and all claims and causes of action set forth on Exhibit "A" entitled "Retained Causes of Actions", attached hereto and made part hereof, and including all Causes of Action, demands, defenses, suits, judgments, choses in action, and all other rights and remedies (legal or equitable) of the Debtors and the Estates, for or on behalf of creditors and/or the Debtors and/or the Estates, including but not limited to any and all claims and/or Causes of Action by the Estates and/or the Debtors, against any and all creditors, governmental units, or other persons, of every kind or nature, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, matured or unmatured, whether arising before, on or after the Petition Date, in contract or in tort, at law or in equity, and whether or not brought as of the Effective Date, including but not limited to those for (i) damages, (ii) the recovery of monies, (iii) lien avoidance, subordination, surcharge, recharacterization, setoff, counterclaim, contribution or recoupment, (iv) tax refunds, (v) claims and defenses such as fraud, mistake, duress and usury, (vi) claims on contracts or for breaches of duties imposed by law, (vii) injunctive, equitable or other relief, (viii) claims and Causes of Action that may be

{00303527-2}                                                    11

asserted derivatively on behalf of the Debtors, the Estates, or the Reorganized Debtors, (ix) claims and Causes of Action pursuant to section 362 of the Bankruptcy Code, and (x) all Unreleased Avoidance Actions, provided however that Retained Causes of Action shall not include any claims or Causes of Action released under the Settlement Agreement.

1.94.    ***Sale*** means the sale or transfer of all or part of the Sale Assets under or in connection with the Plan, any APA, the Auction Sale Order or any other order of the Bankruptcy Court.

1.95.    ***Sale Assets*** means all property in which any Debtor holds or asserts title in and/or has possession of, in the form of the respective "Jones Act" products tanker under construction for the Debtor's account prior to the Petition Date, and any and all engines, modules, components, equipment, goods, inventory, tools, raw materials, machinery and work in progress constructed, manufactured, produced or delivered in connection with the Vessel Construction Project or to be constructed, manufactured, produced or delivered in connection with the Vessel Construction Project, in each case in any form whatsoever, including whether or not completed, finished, provided or delivered in connection with the Vessel Construction Project; all rights or assertion of rights of each Debtor to receive proceeds of any insurance, indemnity, warranty or guaranty with respect to the Vessel Construction Project (except for STUSCO Insurance/Indemnity Rights); claims of each Debtor for damages arising out of or for breach of or default under any contract related to the Vessel Construction Project; all books and records of each Debtor pertaining to the Vessel Construction Project; and Vessel Construction Licenses (all of this property, collectively, to be identified in one or more inventory lists agreed upon by the Debtors, and the Settling Secured Creditors prior to the Confirmation Hearing (provided, however, that the failure to identify any particular asset on an inventory list or to prepare an inventory list shall not exclude any later identified assets - agreed upon by the Debtors or, if after the Effective Date, the Reorganized Debtors, and the Settling Secured Creditors - from being a Sale Asset).

1.96.    ***Sale Order*** means any order entered by the Bankruptcy Court (a) granting a motion to sell or transfer all or part of the Sale Assets, or (b) confirming a sale or transfer of all or part of the Sale Assets pursuant to the Auction Sale Order.

1.97.    ***Sale Proceeds*** means the proceeds of the sale or transfer of the Sale Assets.

1.98.    ***Scheduled*** means set forth, stated or listed on the Schedules.

1.99.    ***Schedules*** means the Schedules of Assets and Liabilities and List of Equity Security Holders Filed by the Debtors under the Bankruptcy Rules, as the same have been or may be amended from time to time before the Effective Date.

1.100.    ***SCS*** means Ship Construction Strategies, Inc.

1.101.    ***SCS Claims*** means the Proof(s) of Claim filed by SCS on January 19, 2010, the Debtors scheduled unsecured nonpriority claims of SCS totaling in excess of $67,579.05 (collectively with any other claims SCS may have against the Debtors).

1.102.    ***Secured Claim*** means any claim that is secured by a valid, perfected and

unavoidable lien on property in which the Estates have an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the claimholder's interest in the Estates' interest in such property or to the extent of the amount subject to setoff, as applicable, and determined under section 506 of the Bankruptcy Code.

1.103. ***Settlement Agreement*** means the Settlement Agreement and Release dated as of April 19, 2010 by and among the Debtors, SCS, and the Settling Secured Creditors, attached hereto as Exhibit "B".

1.104. ***Settling Secured Creditors*** means STUSCO, AMA, Jamestown, Houma, VT Halter, Conrad, Beacon, Top Coat, and Havard.

1.105. ***Stalking Horse Agreement*** means one or more asset purchase agreements (as may be amended, modified, restated or supplemented from time to time) by and among the Debtors, as sellers, and a Stalking Horse Bidder, as buyer, which provides, among other things, for the sale or transfer of all or part of the Sale Assets.

1.106. ***Stalking Horse Bidder*** means any buyer under a Stalking Horse Agreement.

1.107. ***STUSCO*** means Shell Trading (U.S.) Company.

1.108. ***STUSCO Claims*** means the Proof(s) of Claim filed by STUSCO on February 23, 2010, against each of First Mesa Tankships, LLC, Dos Raven Tankships, LLC, and Keet Seel Tankships, LLC (Claim Nos. 13, 10 and 8, respectively) (collectively with any STUSCO claims the Debtors scheduled, and any other claims STUSCO may have against the Debtors asserting its security interests in all of the Sale Assets, and its claims against the Debtors in the Bankruptcy Cases based upon amounts owed by the Debtors to STUSCO under or related to three respective agreements to charter and other transaction documents) with such amounts totaling in excess of $368,000,000.

1.112. ***STUSCO Insurance / Indemnity Rights*** means any rights or asserted rights of each Debtor to receive proceeds of any insurance, indemnity, warranty or guaranty with respect to the Vessel Construction Project and related to or arising from an event occurring prior to the Petition Date, and/or claims of each Debtor for damages arising out of or for breach of default prior to the Petition Date under any contract related to the Vessel Construction Project to the extent such claims are not released herein or pursuant to the Settlement Agreement, which proceeds shall be excluded from the Waterfall and shall be payable first and only to STUSCO pursuant to the Settlement Agreement and this Plan.

1.113. ***Top Coat*** means Top Coat, Inc.

1.114. ***Top Coat Claims*** means the Proof(s) of Claim filed by Top Coat Claims on February 24, 2010, against each of First Mesa Tankships, LLC and Dos Raven Tankships, LLC (Claim Nos. 27 and 17, respectively), in addition to the Proof of Claim Top Coat filed against each of First Mesa Tankships, LLC and Keet Seel Tankships, LLC on December 16, 2009 (Claim Nos. 1 and 2, respectively) and the Proof of Claim Top Coat filed against Dos Raven Tankships, LLC on December 18, 2009 (Claim No. 2) (collectively with any Top Coat claims the Debtors

scheduled, and any other claims Top Coat may have against the Debtors) asserting claims against the Debtors in the Bankruptcy Cases, with such amounts totaling in excess of $1,223,736.80.

1.116.   ***Unreleased Avoidance Actions*** means any and all actual or potential claims to avoid or recover a transfer of property or avoid any obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 547, 548, 549, 550, 551 and 553(b) of the Bankruptcy Code, including those which maybe asserted derivatively, that are not released in the Settlement Agreement, the Plan, the Auction Sale Order, the Confirmation Order and/or any other order of the Bankruptcy Court approving the release of Avoidance Actions.

1.117.   ***Unsecured Claim*** means any claim that is not an Administrative Claim, Priority Claim, Secured Claim of a Settling Secured Creditor, Class 10 Other Secured Claim or a Claim otherwise specifically classified in another class in this Plan.

1.118.   ***Unsecured Creditors Fund*** means the amount of $50,000, to be funded from the Sale Proceeds.

1.119.   ***U.S. Trustee*** means the United States Trustee for the Eastern District of Louisiana.

1.120.   ***U.S. Trustee Fees*** means fees due to the U.S. Trustee by the Debtors or Reorganized Debtors arising under 28 U.S.C. § 1930(a)(6) or otherwise, and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

1.121.   ***Vessel Construction Licenses*** mean, collectively, the limited, nonexclusive vessel construction licenses (a) dated July 2, 2007, by and between AHL and Dos Raven Tankships, LLC, (b) dated July 2, 2007, by and between AHL and Keet Seel Tankships, LLC, and (c) dated July 2, 2007, by and between AHL and First Mesa Tankships, LLC.

1.122.   ***Vessel Construction Project*** means the transactions with STUSCO whereby each Debtor was obligated to design, construct, integrate, commission, and deliver a 49,000-DWT double-hulled "Jones Act" products tanker (documented under the laws of the United States of America with a coastwise endorsement) for long-term time charter by STUSCO, and in connection with these transactions, the Debtors' transactions with each of AMA, Jamestown, Houma, VT Halter, Conrad, Beacon, Top Coat, and Havard for the fabrication of modules and/or the provision of equipment or systems to be ultimately assembled and integrated into the form of three individual tankers.

1.123.   ***Voting Deadline*** means the deadline for voting to accept or reject the Plan established by order of the Bankruptcy Court.

1.124.   ***VT Halter*** means VT Halter Marine, Inc.

1.125.   ***VT Halter Claims*** means the Proof(s) of Claim filed by VT Halter on February 23, 2010, against each of First Mesa Tankships, LLC and Keet Seel Tankships, LLC (Claim Nos. 15 and 9, respectively) (collectively with any VT Halter claims the Debtors scheduled, and any other claims VT Halter may have against the Debtors) asserting claims against the Debtors in the

Bankruptcy Cases, with such amounts totaling in excess of $1,565,258.00.

1.126. **Waterfall** means the schedule for distribution attached as Exhibit A to the Settlement Agreement.

1.127. **Wind Down** means the wind down and liquidation of the Debtors and, after the Effective Date, the Reorganized Debtors, in accordance with the Plan.

1.128. **Wind Down Costs** means the Plan Administrator Expenses and, to the extent not included therein, the fees and expenses incurred by the Reorganized Debtors following the Effective Date (including reasonable fees and costs of attorneys and other professionals) for the purpose of: (i) resolving Disputed Claims, if any, and effectuating distributions to holders of Allowed Claims; (ii) otherwise implementing the Plan, the Wind Down and the closing of the Bankruptcy Cases; and (iii) undertaking such other matters relating to implementation of the Plan as are deemed necessary and appropriate by the Reorganized Debtors.

B.    *Interpretation; Application of Definitions and Rules of Construction.*

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan. The words "in this Plan", "this Plan", "herein", "hereof", "hereto", "hereunder", and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein. The phrase "with the consent of the Settling Secured Creditors", "with the approval of the Settling Secured Creditors", "acceptable to the Settling Secured Creditors" or similar phrases contained herein requiring the consent or approval of the Settling Secured Creditors to any action or agreement referenced in this Plan means the approval or consent by a vote of at least two-thirds (2/3) of the Settling Secured Creditors (including at least one of either STUSCO or AMA). The word "including" means "including but not limited to". The use of the word "any" shall mean "any and all", and the use of the word "all" shall also mean "any and all". The words "shall" and "will" are used interchangeably and have the same meaning.

Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender will include the masculine, the feminine and the neuter. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. Except for the rules of construction contained in sections 102(5) of the Bankruptcy Code, which shall not apply, the rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan. Any reference in this Plan to a contract, instrument, release, indenture, or other agreement or documents being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, and any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented. Subject to the provisions of any contract, certificates or articles of incorporation, by-laws, instruments, releases, or other agreements or documents entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules. The captions and headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Any reference to a Person as a holder of a Claim or Interest includes that Person's successors and assigns.

C.      *Plan Documents.*

All Plan Documents are incorporated into the Plan by reference and are a part of the Plan as if set forth in full herein. Confirmation of the Plan shall constitute approval of the Plan Documents by the Bankruptcy Court as of the Effective Date.

# ARTICLE II.

# ADMINISTRATIVE EXPENSE CLAIMS, FEE CLAIMS, U.S. TRUSTEE FEES AND PRIORITY CLAIMS

In accordance with section 1123(a)(1)of the Bankruptcy Code, Administrative Expense Claims, Fee Claims, U.S. Trustee Fees and Priority Claims of the Debtors have not been classified, and the holders thereof are not entitled to vote on this Plan.

2.1.    *Administrative Expense Claims.*

(a)      *Time for Filing Administrative Expense Claims.*

The holder of an Administrative Expense Claim (including, for the avoidance of doubt, any claim for substantial contribution under section 503(b)(3) or (4) of the Bankruptcy Code), other than the holder of:

(i)      a Fee Claim;

(ii)     an Administrative Expense Claim that has been Allowed on or before the Effective Date;

(iii)    an Administrative Expense Claim for an expense or liability incurred and payable in the ordinary course of business by a Debtor;

(iv)    an Administrative Expense Claim on account of fees and expenses on or after the Petition Date by ordinary course professionals retained by the Debtors pursuant to an order of the Bankruptcy Court; and

(v)      an Administrative Expense Claim arising, in the ordinary course of business, out of the employment by one or more Debtors of an individual from and after the Petition Date, but only to the extent that such Administrative Expense Claim is solely for outstanding wages, commissions, accrued benefits, or reimbursement of business expenses.

*must file with the Bankruptcy Court and serve on the Debtors, a request for payment of such Administrative Expense Claim (1) on or before the first deadline set for the filing of objections to the confirmation of the Plan (the "****Confirmation Objection Deadline****") for any such Administrative Expense Claims claimed for the period  from the Petition Date through the Confirmation Objection Deadline, and (2) within thirty (30) days after the Effective Date for any such Administrative Expense Claims claimed for the period  from the Confirmation Objection Deadline through the Effective Date.* Such request of Administrative Expense Claim must include at a minimum: (i) the name of the applicable Debtor that is purported to be liable for the

Administrative Expense Claim and if the Administrative Expense Claim is asserted against more than one Debtor, the exact amount asserted to be owed by each such Debtor; (ii) the name of the holder of the Administrative Expense Claim; (iii) the amount of the Administrative Expense Claim; (iv) the basis of the Administrative Expense Claim; and (v) supporting documentation for the Administrative Expense Claim. **FAILURE TO FILE AND SERVE SUCH REQUEST FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE EXPENSE CLAIM BEING FOREVER BARRED AND DISCHARGED**.

        (b)        *Treatment of Administrative Expense Claims.*

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date an Administrative Expense Claim becomes an Allowed Claim, the holder of such Allowed Administrative Expense Claim shall receive from the applicable Reorganized Debtor Cash in an amount equal to such Allowed Claim; <u>provided, however,</u> that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as Debtors in Possession, shall be paid by the applicable Reorganized Debtor, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents relating to, such liabilities; <u>provided, further, however,</u> that any Administrative Expense Claim that is an Assumed Liability shall be assumed by the Purchaser and the Purchaser shall be responsible and the holder thereof shall have no recourse against the Debtors, the Reorganized Debtors, or the Plan Administrator or any of their property on account of such Administrative Expense Claim.

    2.2.    *Fee Claims.*

        (a)        *Time for Filing Fee Claims.*

Any Professional seeking allowance by the Bankruptcy Court of a Fee Claim shall file its respective final application for allowance of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date no later than forty-five (45) days after the Effective Date. **FAILURE TO FILE AND SERVE SUCH FEE APPLICATION TIMELY AND PROPERLY SHALL RESULT IN THE FEE CLAIM BEING FOREVER BARRED AND DISCHARGED**.

Objections to such Fee Claims, if any, must be filed and served no later than sixty-five (65) days after the Effective Date or such other date as established by the Bankruptcy Court. The Reorganized Debtors may seek an extension of this deadline for objecting to Fee Claims on *ex parte* motion.

        (b)        *Treatment of Fee Claims.*

All Professionals seeking allowance by the Bankruptcy Court of a Fee Claim shall be paid in full in such amounts as are approved by the Bankruptcy Court: (i) upon the later of (x) the Effective Date, and (y) ten (10) calendar days after the date upon which the order relating to the allowance of any such Fee Claim is entered or (ii) upon such other terms as may be mutually agreed upon between the holder of such Fee Claim and the Reorganized Debtors. On the Effective Date, to the extent funds are available, the Reorganized Debtors shall reserve and hold in a segregated

account or shall place in escrow Cash in an amount equal to the accrued but unpaid estimated Fee Claims as of the Effective Date, which Cash shall be disbursed solely to the holders of Allowed Fee Claims with the remainder to be reserved until all Allowed Fee Claims have been paid in full or all remaining Fee Claims have been Disallowed by Final Order, at which time any remaining Cash in the segregated account shall become the sole and exclusive property of the Reorganized Debtors to be distributed in accordance with the terms of this Plan.

2.3.     *U.S. Trustee Fees*.

Each of the Reorganized Debtors shall pay all outstanding U.S. Trustee Fees of such Debtor on an ongoing basis on the later of: (i) the Effective Date; and (ii) the date such U.S. Trustee Fees become due, until such time as a final decree is entered closing the applicable Bankruptcy Case or the applicable Bankruptcy Case is converted or dismissed, or the Bankruptcy Court orders otherwise.

2.4.     *Priority Claims*.

Except to the extent that a holder of an Allowed Priority Claim agrees to different treatment, each holder of an Allowed Priority Claim shall receive on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date a Priority Claim becomes an Allowed Priority Claim, Cash in an amount equal to such Claim provided, however, that all Allowed Priority Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as they become due; provided, further, however, that any Priority Claim that is an Assumed Liability shall be assumed by the Purchaser and the Purchaser shall be responsible therefor and the holder thereof shall have no recourse against the Debtors or the Reorganized Debtors, the Plan Administrator or any of their property on account of such Priority Claim.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

3.1.     *Classification of Claims and Interests*.

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code. However, a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim or Interest is or becomes an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

The following designates the Classes of Claims against and Interests in the Debtors and the treatment thereof under the Plan, and specifies which Classes are: (i) impaired or unimpaired by this Plan; (ii) entitled to vote to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code; and (iii) deemed to accept or reject this Plan.

{00303527-2}                                          18

A.   *Classified Claims.*

1.   *Class 1 Claim of STUSCO.*

(a)   Treatment:  The STUSCO Claims are Allowed in the amount of at least $368,354,217 (the "***STUSCO Allowed Claim***"). The STUSCO Allowed Claim shall be treated and satisfied as provided in the Settlement Agreement, including, without limitation, the payment to STUSCO of proceeds from STUSCO Insurance/Indemnity Rights (as defined in the Settlement Agreement). The STUSCO Allowed Claim shall be comprised of a secured claim (the "***STUSCO Secured Claim***") and an unsecured deficiency claim (the "***STUSCO Unsecured Deficiency Claim***"). For voting purposes only, and in no manner a limitation on the distributions to STUSCO on the STUSCO Allowed Claim as provided in the Settlement Agreement, the STUSCO Secured Claim is estimated at $44,155,247 and the STUSCO Unsecured Deficiency Claim is estimated at $324,198,970; and

(b)   Voting:  The STUSCO Secured Claim is an impaired claim. The holder of such claim is entitled to vote to accept or reject the Plan in Class 1 of the Plan. STUSCO shall be entitled to vote the estimated STUSCO Unsecured Deficiency Claim in Class 11 of the Plan.

2.   *Class 2 Claim of AMA.*

(a)   Treatment:  The AMA Claims are Allowed in the amount of at least $74,692,105 (the "***AMA Allowed Claim***").  The AMA Allowed Claim shall be treated and satisfied as provided in the Settlement Agreement.  The AMA Allowed Claim shall be comprised of a secured claim (the "***AMA Secured Claim***") and an unsecured deficiency claim (the "***AMA Unsecured Deficiency Claim***").  For voting purposes only, and in no manner a limitation on the distributions to AMA on the AMA Allowed Claim as provided in the Settlement Agreement, the AMA Secured Claim is estimated at $24,000,000 and the AMA Unsecured Deficiency Claim is estimated at $50,692,105; and

(b)   Voting:  The AMA Secured Claim is an impaired claim. The holder of such claim is entitled to vote to accept or reject the Plan in Class 2 of the Plan.  AMA shall be entitled to vote the estimated AMA Unsecured Deficiency Claim in Class 11 of the Plan.

3.   *Class 3 Claim of Jamestown.*

(a)   Treatment:  The Jamestown Claims are Allowed in the amount of at least $8,080,658 (the "***Jamestown Allowed Claim***"). The Jamestown Allowed Claim shall be treated and satisfied as provided in the Settlement Agreement.  The Jamestown Allowed Claim shall be comprised of a secured claim (the "***Jamestown Secured Claim***") and an unsecured deficiency claim (the "***Jamestown Unsecured Deficiency Claim***"). For voting purposes only, and in no manner a limitation on the distributions to Jamestown on the Jamestown Allowed Claim as provided in the Settlement Agreement, the Jamestown Secured Claim is estimated at $5,325,000 and the Jamestown Unsecured Deficiency Claim is estimated at $2,755,658; and

(b)   Voting:  The Jamestown Secured Claim is an impaired claim. The holder of such claim is entitled to vote to accept or reject the Plan in Class 3 of the Plan.

{00303527-2}                                                19

Jamestown shall be entitled to vote the Jamestown Unsecured Deficiency Claim in Class 11 of the Plan.

    4.    *Class 4 Claim of Houma*.

    (a)    Treatment:  The Houma Claims are Allowed in the amount of at least $5,049,871 (the "***Houma Allowed Claim***").  The Houma Allowed Claim shall be treated and satisfied as provided in the Settlement Agreement.  The Houma Allowed Claim shall be comprised of a secured claim (the "***Houma Secured Claim***") and an unsecured deficiency claim (the "***Houma Unsecured Deficiency Claim***").  For voting purposes only, and in no manner a limitation on the distributions to Houma on the Houma Allowed Claim as provided in the Settlement Agreement, the Houma Secured Claim is estimated at $3,600,000 and the Houma Unsecured Deficiency Claim is estimated at $1,449,871; and

    (b)    Voting:  The Houma Secured Claim is an impaired claim. The holder of such claim is entitled to vote to accept or reject the Plan in Class 4 of the Plan.  Houma shall be entitled to vote the estimated Houma Unsecured Deficiency Claim in Class 11 of the Plan.

    5.    *Class 5 Claim of VT Halter*.

    (a)    Treatment:  The VT Halter Claims are Allowed in the amount of at least $1,565,258 The ("***VT Halter Allowed Claim***"). The VT Halter Allowed Claim shall be treated and satisfied as provided in the Settlement Agreement. The VT Halter Allowed Claim shall be comprised of a secured claim (the "***VT Halter Secured Claim***") and an unsecured deficiency claim (the "***VT Halter Unsecured Deficiency Claim***").  For voting purposes only, and in no manner a limitation on the distributions to VT Halter on the VT Halter Allowed Claim as provided in the Settlement Agreement, the VT Halter Secured Claim is estimated at $1,173,943 and the VT Halter Unsecured Deficiency Claim is estimated at $391,315; and

    (b)    Voting: The VT Halter Secured Claim Halter is an impaired claim. The holder of such claim is entitled to vote to accept or reject the Plan in Class 5 of the Plan.  VT Halter shall be entitled to vote the estimated VT Halter Unsecured Deficiency Claim in Class 11 of the Plan.

    6.    *Class 6 Claim of Conrad*.

    (a)    Treatment:  The Conrad Claims are Allowed in the amount of at least $677,865 (the "***Conrad Allowed Claim***").  The Conrad Allowed Claim shall be treated and satisfied as provided in the Settlement Agreement.  The Conrad Allowed Claim shall be comprised of a secured claim (the "***Conrad Secured Claim***") and an unsecured deficiency claim (the "***Conrad Unsecured Deficiency Claim***").  For voting purposes only, and in no manner a limitation on the distributions to Conrad on the Conrad Allowed Claim as provided in the Settlement Agreement, the Conrad Secured Claim is estimated at $508,399 and the Conrad Unsecured Deficiency Claim is estimated at $169,466; and

    (b)    Voting:  The Conrad Secured Claim is an impaired claim. The

holder of such claim is entitled to vote to accept or reject the Plan in Class 6 of the Plan. Conrad shall be entitled to vote the estimated Conrad Unsecured Deficiency Claim in Class 11 of the Plan.

    7.    *Class 7 Claim of Beacon*.

        (a)    Treatment:  The Beacon Claims are Allowed in the amount of at least $279,599 (the "***Beacon Allowed Claim***").  The Beacon Allowed Claim shall be treated and satisfied as provided in the Settlement Agreement. The Beacon Allowed Claim shall be comprised of a secured claim (the "***Beacon Secured Claim***") and an unsecured deficiency claim (the "***Beacon Unsecured Deficiency Claim***").  For voting purposes only, and in no manner a limitation on the distributions to Beacon on the Beacon Allowed Claim as provided in the Settlement Agreement, the Beacon Secured Claim is estimated at $209,699 and the Beacon Unsecured Deficiency Claim is estimated at $69,900; and

        (b)    Voting:  The Beacon Secured Claim is an impaired claim. The holder of such claim is entitled to vote to accept or reject the Plan in Class 7 of the Plan. Beacon shall be entitled to vote the estimated Beacon Unsecured Deficiency Claim in Class 11 of the Plan.

    8.    *Class 8 Claim of Top Coat*.

        (a)    Treatment:  The Top Coat Claims are Allowed in the amount of at least $1,278,687 (the "***Top Coat Secured Claim***").  The Top Coat Allowed Claim shall be treated and satisfied as provided in the Settlement Agreement.  The Top Coat Allowed Claim shall be comprised of a secured claim (the "***Top Coat Secured Claim***") and an unsecured deficiency claim (the "***Top Coat Unsecured Deficiency Claim***").  For voting purposes only, and in no manner a limitation on the distributions to Top Coat on the Top Coat Allowed Claim as provided in the Settlement Agreement, the Top Coat Secured Claim is estimated at $959,015 and the Top Coat Unsecured Deficiency Claim is estimated at $319,672; and

        (b)    Voting:  The Top Coat Secured Claim is an impaired claim. The holder of such claim is entitled to vote to accept or reject the Plan in Class 8 of the Plan.  Top Coat shall be entitled to vote the estimated Top Coat Unsecured Deficiency Claim in Class 11 of the Plan.

    9.    *Class 9 Claim of Havard*.

        (a)    Treatment:  The Havard Claims are Allowed in the amount of at least $101,506 (the "***Havard Allowed Claim***").  The Havard Allowed Claim shall be treated and satisfied as provided in the Settlement Agreement. The Havard Allowed Claim shall be comprised of a secured claim (the "***Havard Secured Claim***") and an unsecured deficiency claim (the "***Havard Unsecured Deficiency Claim***").  For voting purposes only, and in no manner a limitation on the distributions to Havard on the Havard Allowed Claim as provided in the Settlement Agreement, the Havard Secured Claim is estimated at $68,696 and the Havard Unsecured Deficiency Claim is estimated at $32,810; and

(b)     Voting:   The Havard Secured Claim is an impaired claim. The holder of such claim is entitled to vote to accept or reject the Plan in Class 9 of the Plan.  Havard shall be entitled to vote the estimated Havard Unsecured Deficiency Claim in Class 11 of the Plan.

10.     *Class 10 Other Secured Claims*.

(a)     Treatment:     On or before the Effective Date, pursuant to section 506(a)(1) of the Bankruptcy Code and Bankruptcy Rule 3012, the Bankruptcy Court shall determine (through estimation or otherwise) the validity, priority, extent and value of the holders of Class 10 Other Secured Claims' asserted liens and security interests in the estate's interest in Sale Assets (such amount, if any, a "***Class 10 Secured Amount***"). The Debtors or, if after the Effective Date, the Reorganized Debtors, will at their option, and upon  entry of a Final Order determining that the holder of a Class 10 Other Secured Claim has an Allowed Class 10 Other Secured Claim  in a Class 10 Secured Amount, either: (i) transfer the property subject to such lien to the holder thereof in full satisfaction of such Class 10 Other Secured Claim; (ii) pay the Class 10 Secured Amount from the Sale Proceeds to the holder thereof from the Payment Reserve Fund; or (iii) provide the holder thereof the indubitable equivalence of the Class 10 Other Secured Claim; and

(b)     Voting:  Other Secured Claims are impaired claims.  The holders of Allowed Class 10 Other Secured Claims are entitled to vote to accept or reject the Plan in Class 10 of the Plan.  If there is more than one Allowed Class 10 Other Secured Claim, then each Allowed Class 10 Other Secured Claim shall be classified as a separate sub-class of Class 10 Other Secured Claims and each such sub-class shall be entitled to vote on the Plan as a separate class.

11.     *Class 11 Unsecured Claims*.

(a)     Treatment:   Under the Plan, the holders of Allowed Class 11 Unsecured Claims shall receive their respective *pro rata* share of (i) the recoveries, if any, from the Non Sale Assets, including the Unreleased Avoidance Actions, and (ii) the funds, if any, in the Unsecured Creditors' Fund, after payment (or reserve for payment) in full of the Class 11 Wind Down Costs, without dilution by the deficiency claims of Classes 1 – 9; and

(b)     Voting:   Unsecured Claims are impaired claims. The holders of Allowed Class 11 Unsecured Claims, and the holders of Claims in Classes 1 through 9 with respect to their respective unsecured deficiency claims, are entitled to vote to accept or reject the Plan in Class 11 of the Plan.

B.     *Classified Interests*.

1.     *Class 12 Interests*.

(a)     Treatment: Any existing Interests in the Debtors will be canceled as of the Effective Date. The holders of Interests in the Debtors shall not receive any distributions under the Plan; and

(b)      Voting:  Class 12 Interests are impaired.  Pursuant to 11 U.S.C. § 1126(g) of the Bankruptcy Code, holders of Class 12 Interests are deemed to have rejected the Plan and the votes of such holders will not be solicited with respect to such Interests.

## ARTICLE IV.

## ACCEPTANCE OR REJECTION OF
## THE PLAN; EFFECT OF REJECTION BY ONE
## OR MORE CLASSES OF CLAIMS OR INTERESTS

4.1.   *Class Acceptance Requirement.*

(a)      A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount of the Allowed Claims in such Class and more than one-half (1/2) in number of holders of such Claims that have voted on the Plan.

(b)      A Class of Interests shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount of the Allowed Interests in such Class that have voted on the Plan.

4.2.   *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or "Cramdown."*

If any Classes vote to reject this Plan, the Debtors intend to request confirmation of this Plan, as it may be modified and amended from time to time, under section 1129(b) of the Bankruptcy Code. Subject to the consent of the Settling Secured Creditors, the Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan or any Plan Document, as to any and all Debtors, in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

4.3.   *Elimination of Vacant Classes.*
Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE V.

## MEANS FOR IMPLEMENTATION

5.1   *Approval and Implementation of Settlement Agreement*

(a)      Pursuant to Bankruptcy Rule 9019 and this Plan, and in consideration for the distributions and other benefits provided under the Settlement Agreement and this Plan, the Confirmation Order shall constitute approval of the Settlement Agreement as a good

faith compromise and settlement. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Settlement Agreement and the Bankruptcy Court's finding that Settlement Agreement is: (a) in the best interests (x) of the Debtors and their respective Estates and property, and (y) of the Claim and Interest holders; and (b) fair, equitable and reasonable. The Settlement Agreement is incorporated herein by reference and constitutes an integal part of the Plan for all purposes.

5.2     *Sale or Liquidation of Assets.*

(a)     *Administration, Sale and/or Liquidation of Sale Assets.*

To the extent not previously sold or transferred as of the Effective Date, the Reorganized Debtors shall be authorized to, among other things, sell, assume, assign and/or transfer all or part of  the Sale Assets pursuant to sections 105(a), 363, 365, 1123(b)(4), 1129 and 1146(a) of the Bankruptcy Code under the terms and conditions of the Auction Sale Order or any Sale Order or this Plan, free and clear of any and all Liens, Interests, interests, Claims, charges  and encumbrances, and shall be authorized to take any and all actions necessary to consummate the Sale. The actions necessary to effect the sale of all or part of the Sale Assets may include: (i) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, duty or obligation on terms consistent with the terms of the Auction Sale Order, any Sale Order or  the Plan and having such other terms to which the Reorganized Debtors  and the Purchaser may agree, and (ii) all other actions that the Reorganized Debtors and the Purchaser determine to be necessary or appropriate in connection with such transactions, including making such filings or recordings that may be required by or appropriate under applicable state law.

(b)     *Administration and Recovery of STUSCO Insurance/Indemnity Rights.*

Notwithstanding any other provision of this Plan or any exhibit to the Plan, the STUSCO Insurance/Indemnity Rights shall not be released and shall be retained under the Plan. At the option of STUSCO, the STUSCO Insurance/Indemnity Rights will either be (i) pursued, settled and recovered by the Reorganized Debtors with such actions taken in such pursuit, settlement and recovery subject to the approval of STUSCO or (ii) to the extent permitted by applicable non-bankruptcy law, assigned in whole or part, to STUSCO for pursuit, settlement and recovery. The costs and expenses of administration and recovery of the STUSCO Insurance/Indemnity Rights shall be the responsibility of STUSCO as provided in Section 5.3(c) of the Plan.  For the avoidance of doubt, STUSCO shall be entitled to receive any proceeds from the STUSCO Insurance/Indemnity Rights and paid such proceeds as provided in the Settlement Agreement.

(c)     *Administration, Sale and/or Liquidation of Non-Sale Assets .*

Upon the Effective Date, the Reorganized Debtors shall have the authority to administer, sell and/or liquidate all Non-Sale Assets free and clear of all Claims, Liens, encumbrances, charges, and other Interests. The proceeds of the sale and liquidation of the Non-Sale Assets shall be distributed to holders of Claims as provided in this Plan.

{00303527-2}                                    24

5.3.   *Plan Funding.*

The Debtors' obligations under the Plan and the Wind Down Costs will be funded as follows:

(a)   *Use of Sale Proceeds.*

Except as otherwise provided in the Plan, Sale Proceeds (after payment in full of costs and expenses incurred in connection with the Sale which are not otherwise payable pursuant to provisions of the Plan) shall be used as follows: (i) first, to pay in full Allowed Administrative Expense Claims, Allowed Fee Claims, U.S. Trustee Fees, Allowed Priority Claims, Allowed Class 10 Other Secured Claims (to the extent that the Debtors elect to pay the Class 10 Secured Amount from the Sale Proceeds in cash); (ii) second, to provide a reserve for the payment of Wind Down Costs (excluding the Class11 Wind Down Costs and the costs to pursue the STUSCO Insurance/Indemnity Rights) in an amount agreed to by the Debtors or, if after the Effective Date, the Reorganized Debtors, and the Settling Secured Creditors; (iii) third, to fund the Unsecured Creditors' Fund, and (iv) to distribute the balance of the Sale Proceeds to Classes 1-9 in accordance with the Waterfall of the Settlement Agreement. For the avoidance of doubt, other than the amounts set forth in subsections (i) - (iii) of this subsection (a), and as provided in Section 5.8 of the Plan, no expenses or costs or Claims shall be charged against or otherwise payable from the Sale Proceeds (other than the distribution to Classes 1-9 in accordance with the Waterfall of the Settlement Agreement).

(b)   *Use of Proceeds of Non- Sale Assets and Unsecured Creditors' Fund.*

The proceeds of the Non- Sale Assets, including recoveries, if any, from the Unreleased Avoidance Actions, and the Unsecured Creditors' Fund, shall be used (i) first, to pay in full the Class 11 Wind Down Costs, and (ii) then, to make distributions to holders of Allowed Class 11 Unsecured Claims as provided in the Plan.

(c)   *Payment of Expenses Related to STUSCO Insurance/Indemnity Rights.*

To the extent that any of the STUSCO Insurance/Indemnity Rights are pursued by the Debtors or the Reorganized Debtors, the costs and expenses incurred after June 30, 2010 and related to the pursuit, settlement or recovery of STUSCO Insurance/Indemnity Claims shall be the responsibility of STUSCO and shall be budgeted and paid as agreed to by STUSCO and the Debtors or the Reorganized Debtors. To the extent that any of the STUSCO Insurance/Indemnity Rights are assigned to STUSCO for pursuit, STUSCO shall have the responsibility for payment of all costs and expenses of pursuing, settling and recovering of such assigned rights.

5.4.   *Continued Corporate Existence and Vesting of Assets.*

(a)   Except as otherwise provided in this Plan, the Reorganized Debtors will continue to exist after the Effective Date as separate corporate entities, in accordance with the applicable laws of the respective jurisdictions in which they are incorporated or organized, for the purposes of satisfying their obligations under the Plan, including making

distributions as required under the Plan and effectuating the Wind Down. On or after the Effective Date, each Reorganized Debtor, in its sole and exclusive discretion, may take such action as permitted by applicable law as such Reorganized Debtor may determine is reasonable and appropriate, including, but not limited to, causing: (i) a Reorganized Debtor to be merged into another Reorganized Debtor, or its affiliate; (ii) a Reorganized Debtor to be dissolved; (iii) the legal name of a Reorganized Debtor to be changed; or (iv) the closing of a Reorganized Debtor's case after the Final Distribution Date or such earlier date agreed by the Reorganized Debtors and the Plan Advisory Committee.

(b)    On and after the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, and except as otherwise provided in this Plan or in the Confirmation Order, all Assets of the Debtors' Estates, including all claims, rights and Retained Causes of Action, as identified on Exhibit "A", shall vest in each respective Reorganized Debtor free and clear of all Claims, Liens, charges, other encumbrances and Interests. On and after the Effective Date, the Reorganized Debtors may effectuate the Wind Down of the Estates, including payment of all Wind Down Costs, and may use, acquire and dispose of property and prosecute, compromise or settle any Claims (including any Administrative Expense Claims), Retained Causes of Action, without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by this Plan or the Confirmation Order. Without limiting the foregoing, the Reorganized Debtors may pay the charges that they incur on or after the Effective Date for Professional Persons' fees, disbursements, expenses or related support services without application to the Bankruptcy Court.

5.5.    *Credit Agreements, Existing Securities and Agreements.*

Except as otherwise provided in this Plan, on the Effective Date, all agreements, instruments, and other documents evidencing any Claim against or Interest in a Debtor and any rights of any holder in respect thereof, including any security interests or Liens in Assets of the Debtors, shall be deemed, discharged and of no force or effect against the Debtors, the Reorganized Debtors and the Assets. The holders of or parties to such instruments, securities and other documentation will have no rights arising from or relating to such instruments, securities and other documentation against the Debtors or Reorganized Debtors or the Assets, except the rights provided for pursuant to the Plan, but shall reserve any and all rights arising therein against all other Persons, unless specifically released under the Plan or Settlement Agreement.

5.6.    *Corporate Governance.*

From and after the Effective Date, each of the Reorganized Debtors shall be managed and administered through the Plan Administrator, who shall be appointed the sole manager of each of the Reorganized Debtors and shall have full authority to administer the provisions of the Plan. The Plan Administrator may employ one or more Persons to assist it with performing its duties under the Plan.

5.7.   *Plan Administrator.*

1.   *Appointment; Duties.* Not less than ten (10) days prior to the commencement of the Confirmation Hearing and subject to Bankruptcy Court approval in connection with confirmation of the Plan, the Debtors shall designate a person, acceptable to the Settling Secured Creditors, who initially will serve as the Plan Administrator; *provided, however*, that the Plan Administrator shall be subject to removal by the Bankruptcy Court for cause shown at any time.  In carrying out the duties in administering and liquidating the Reorganized Debtors, the Plan Administrator shall consult and cooperate with the Plan Advisory Committee and provide such budgets, reports and other information as may reasonably be requested by the Plan Advisory Committee.

2.   *Qualifications.*  The Plan Administrator shall be a fiduciary of each of the Reorganized Debtors, shall have such qualifications and experience as are sufficient to enable the Plan Administrator to perform its obligations under this Plan, and shall be compensated and reimbursed for expenses.  The Plan Administrator shall not be liable for any action it takes or omits to take that it believes in good faith to be authorized or within its rights or powers unless it is ultimately and finally determined by a court of competent jurisdiction that such action or inaction was the result of fraud, gross negligence or willful misconduct. To the extent necessary, following the Effective Date, the Reorganized Debtors shall be deemed to be a judicial substitute for the Debtors as the party-in-interest in the Bankruptcy Cases, under the Plan or in any judicial proceeding or appeal to which the Debtors are a party, consistent with section 1123(b)(3)(B) of the Bankruptcy Code, and the representative of Estates pursuant to section 1123(b)(3)(B). The Plan Administrator shall not be liable for any action it takes or omits to take that it believes in good faith to be authorized or within its rights or powers unless it is ultimately and finally determined by a court of competent jurisdiction that such action or inaction was the result of fraud, gross negligence or willful misconduct.

3.   *Authority of the Plan Administrator.* On the Effective Date, the Interests of each Debtor shall be canceled and new membership interests constituting 100% of the membership interests in each Reorganized Debtor shall be issued to the Plan Administrator, who shall thereafter be the sole member of each Reorganized Debtor.  On the Effective Date, the Plan Administrator shall be vested with authority to exercise all rights of the Reorganized Debtors (and the Plan Administrator) under applicable non- bankruptcy law and under the Plan.

4.   *Resignation, Death or Removal.* The Plan Administrator may be removed by the Bankruptcy Court upon application for good cause shown. In the event of the resignation or removal, liquidation, dissolution, death or incapacity of the Plan Administrator, the Plan Advisory Committee shall designate another person, acceptable to the Settling Secured Creditors, to become Plan Administrator and thereupon the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of its predecessor.

5.   *Pursuit of Avoidance Actions.*  Except for claims expressly released in the Settlement Agreement, the Plan, the Auction Sale Order, the Confirmation Order, and/or

any other order of the Bankruptcy Court approving any such release, the Unreleased Avoidance Actions shall be the property of the Reorganized Debtors, and shall vest in the Reorganized Debtors on the Effective Date. Upon the Effective Date, the Reorganized Debtors shall have the authority to analyze, continue, commence, prosecute, settle and realize upon the Unreleased Avoidance Actions in their discretion without any requirement of notice or Bankruptcy Court approval, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan or the Confirmation Order.

    6. *Pursuit of Claims Objections.* Except as otherwise provided in the Plan, the Confirmation Order or any other order of the Bankruptcy Court, or with respect to Claims which have been Allowed in the Plan , the Reorganized Debtors shall have the exclusive authority to analyze, file, settle, compromise, withdraw, or litigate to judgment any objections to Claims (the *"**Claims Objections**"*).

  5.8. *Plan Advisory Committee.*

    Except for provisions of the Plan regarding Class 11 Unsecured Claims, and the Non-Sale Assets, a Plan Advisory Committee shall oversee the implementation of the Plan by the Plan Administrator.  The members of the Plan Advisory Committee shall undertake their duties as specified in the Plan.  In serving as a member of the Plan Advisory Committee, such members shall not assume or be deemed to have assumed any liability to Creditors, Interest holders, the Debtors, the Reorganized Debtors, the Plan Administrator, or any other parties in interest in the Bankruptcy Cases and shall not be liable for any acts or omissions while acting in that capacity, except for bad faith and acts or omissions constituting malfeasance or gross negligence.  The members of the Plan Advisory Committee and their respective affiliates, officers, directors, agents and attorneys shall be indemnified by the Reorganized Debtors for acts taken in serving on the Plan Advisory Committee to the extent of any insurance therefor.  The Plan Advisory Committee shall have the right to retain counsel or other professionals, who shall be paid their reasonable fees and expenses by the Reorganized Debtors out of the Sale Proceeds.  The Bankruptcy Court shall retain jurisdiction to hear any disputes relating to the fees and expenses of the Plan Advisory Committee's professionals, which disputes, if any, shall be resolved by the Bankruptcy Court after notice and hearing.  The Plan Advisory Committee shall initially be comprised of (i) two representatives, one appointed by each of STUSCO and AMA, and (ii) a third representative appointed by the mutual agreement of STUSCO and AMA.

  5.9 *Rights and Duties of the Plan Advisory Committee.* The Plan Advisory Committee shall:

    (a) except with respect to Class 11 Unsecured Claims and the Non-Sale Assets, have the right to review and object to settlements and proposed releases or abandonment of objections to Claims, Claims or Causes of Action by the Reorganized Debtors in accordance with this Plan.

    (b) have the right to remove or replace the Plan Administrator, with or without cause, upon the unanimous written consent of all Plan Advisory Committee members.

(c)     perform such additional functions and have such other rights, duties, powers and obligations as (i) may be agreed to by the Reorganized Debtors, (ii) are provided for in the Confirmation Order, or (iii) are provided for by further Order of the Court entered after the Effective Date.

5.10.   *Wind Down of the Debtors' Estates.*

(a)     The Plan Administrator shall oversee the Wind Down and shall make distributions to, and otherwise hold all property of the Reorganized Debtors for the benefit of, holders of Allowed Claims consistent and in accordance with the Plan and the Confirmation Order. The Reorganized Debtors (including the Plan Administrator as the sole member of the Reorganized Debtors) shall not be required to post a bond in favor of the United States.

(b)     Except as otherwise provided in the Plan, the Plan Administrator shall have the power and authority to perform the following acts on behalf of the Reorganized Debtors, in addition to any powers granted by applicable non-bankruptcy law or conferred by any other provision of the Plan or orders of the Bankruptcy Court: (i) take all steps and execute all instruments and documents necessary to make distributions to holders of Allowed Claims; (ii) object to Claims as provided in this Plan and prosecute such objections; (iii) resolve, compromise and/or settle any objections to the amount, validity, priority, treatment, allowance or priority of Claims, Administrative Expenses, or Interests; (iv) comply with this Plan and the obligations hereunder; (v) if necessary, employ, retain, or replace professionals to represent it with respect to its responsibilities; (vi) establish, replenish or release reserves as provided in this Plan, as applicable; (vii) take all actions necessary or appropriate to enforce the Debtors' or Reorganized Debtors' rights under the Auction Sale Order or any Sale Order, and any related document and to fulfill, comply with or otherwise satisfy the Debtors' or Reorganized Debtors' covenants, agreements and obligations under any APA and any related document; (viii) make all determinations on behalf of the Debtors or Reorganized Debtors under any APA; (ix) prepare and file applicable tax returns for any of the Debtors or Reorganized Debtors; (x) liquidate or administer through sale, prosecution, compromise or release any of the Non-Sale Assets; (xi) deposit funds of the Reorganized Debtors, draw checks and make disbursements consistent with the terms of this Plan; (xii) purchase or continue insurance protecting the Debtors, the Reorganized Debtors, the Plan Administrator and the property of the Reorganized Debtors; seek entry of a final decree in any of the Bankruptcy Cases at the appropriate time; prosecute, resolve, compromise and/or settle any litigation; (xv) abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization (as such term is described in Internal Revenue Code section 501(c)(3) (whose contributions are deductible under Internal Revenue Code section 170)) of the Plan Administrator's choice, any assets that are of no material benefit, including distributable Cash hereunder; and (xvi) take such other action as the Plan Administrator may determine to be necessary or desirable to carry out the purpose of this Plan.

(c)     Following the Effective Date, the Reorganized Debtors shall not engage in any business activities or take any actions except those necessary in the judgment of the Plan Administrator to effectuate the Plan, the Wind Down and the compliance with any obligations under any APA or Sale Order. On and after the Effective Date, the Plan

Administrator may, in the name of the Reorganized Debtors, take such action and settle and compromise Claims or Interests without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan or the Confirmation Order.

5.11.  *Assumed Liabilities.*

Unless otherwise provided in the Plan, any other order of the Bankruptcy Court, any APA or any Sale Order, on the Effective Date, the Purchaser shall be responsible for payment and satisfaction of all Assumed Liabilities. **All Persons holding Claims and Interests arising out of or concerning any Assumed Liability shall be forever barred, estopped and permanently enjoined from asserting against the Debtors, the Reorganized Debtors or the Plan Administrator or any of their property, such Persons' Claims or Interests (as applicable) arising out of or concerning such Assumed Liabilities**.

5.12.  *Cancellation of Certain Existing Security Interests.*

Upon the full payment or other satisfaction of any Allowed Class 10 Other Secured Claim, or promptly thereafter, the holder of such Allowed Class 10 Other Secured Claim shall deliver to the Debtors or, if after the Effective Date, the Reorganized Debtors, any property of the Debtors or, if after the Effective Date, the Reorganized Debtors, held by such holder, and any termination statements, instruments of satisfactions, or releases of all security interests with respect to its Class 10 Other Secured Claim that may be reasonably required in order to terminate any related financing statements, mortgages, mechanic's liens, or lis pendens; provided, however, any such property of the Debtors or, if after the Effective Date, the Reorganized Debtors, that is a Sale Asset received by the Debtors or, if after the Effective Date, the Reorganized Debtors, from the holder of such Allowed Claim shall be delivered promptly to any Purchaser thereof. To the extent deemed necessary or appropriate by the Plan Administrator, the Plan Administrator shall have the authority on behalf of and in the name of the holders of Class 10 Other Secured Claims to execute, deliver and file documents to terminate any related financing statements, mortgages, mechanic's liens, or lis pendens.

5.13.  *Managers, Officers and any Boards of Directors.*

(a)  *Officers and Managers.* The managers and any officers of the Debtors immediately prior to the Effective Date, in their capacities as such, shall be deemed removed from such positions as of the Effective Date.

(b)  *Boards.* The members of any board of directors or board of managers of each Debtor prior to the Effective Date, in their capacities as such, shall have no continuing authority with respect to the Reorganized Debtors on or after the Effective Date and each such member will be deemed to have resigned on the Effective Date.

(c)  *Plan Administrator as Sole Manager, Officer and Director.* The Plan Administrator shall be the sole manager, officer and sole member of any board of directors and/ or board of managers of each of the Reorganized Debtors from and following the Effective Date without the need for board or shareholder or membership vote and without any requirement of further action by any members, stockholders, managers, officers, or boards of directors or managers of the Debtors

and shall have all rights of a manager, officer and director of the Reorganized Debtors under applicable non-bankruptcy law, and all rights conferred under the Confirmation Order and this Plan.

5.14.   *Corporate Action.*

(a)      Entry of the Confirmation Order shall establish conclusive corporate and other authority (and evidence of such corporate and other authority) required for each of the Debtors to undertake any and all acts and actions required to implement or contemplated by the Plan (including, without limitation, the execution and delivery of any APA), and such acts and actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without the need for board or shareholder or membership  vote and without any requirement of further action by any members, stockholders, managers, officers, or boards of directors or managers of the Debtors.

(b)      On the Effective Date, Plan Administrator is authorized to execute and/or deliver on behalf of the Debtors and the Reorganized Debtors, as the case may be, the agreements, documents and instruments contemplated by the Plan, and any APA and any Plan Documents, and any schedules, exhibits or other documents attached thereto or contemplated thereby, in the name and on behalf of the Debtors and the Reorganized Debtors.

(c)      Upon entry of a final decree in each Bankruptcy Case, if not previously dissolved, the applicable Reorganized Debtor shall be deemed automatically dissolved and wound up without any further action or formality, which might otherwise be required under applicable non-bankruptcy laws.

5.15.   *Comprehensive Settlement of Claims and Controversies.*

In addition to and without limiting, the approval of the Settlement Agreement, pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of this Plan will constitute a good faith compromise and settlement of all Claims and Interests or controversies relating to the rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any distribution to be made pursuant to this Plan on account of any Allowed Claim or Allowed Interest. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, of all such settlements and the Bankruptcy Court's finding that the settlement of such Claims is: (a) in the best interests (x) of the Debtors and their respective Estates and property, and (y) of the Claim and Interest Holders; and (b) fair, equitable and reasonable.

## ARTICLE VI.

## DISTRIBUTIONS

6.1.   *Distributions.*

The Disbursing Agent shall make all Plan Distributions to the appropriate holders of Allowed Claims in accordance with the terms of this Plan and the Settlement Agreement.

6.2.    *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in the Plan, Confirmation Order or other order of the Bankruptcy Court, postpetition interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

6.3.    *Date of Distributions.*

Unless otherwise provided herein or in the Settlement Agreement, any distributions and deliveries to be made hereunder shall be made on the Effective Date or as soon thereafter as is practicable, <u>provided</u> that the Reorganized Debtors may utilize periodic distribution dates to the extent appropriate. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

6.4.    *Distribution Record Date.*

Except as otherwise provided in the Plan or the Settlement Agreement, as of the close of business on the Distribution Record Date, the various lists of holders of Claims in each of the Classes, as maintained by the Reorganized Debtors, or their agents, shall be deemed closed and there shall be no further changes in the record holders of any of the Claims. Neither the Reorganized Debtors nor the Disbursing Agent shall have any obligation to recognize any transfer of Claims occurring after the close of business on the Distribution Record Date.

6.5.    *Disbursing Agent.*

Except as otherwise provided in the Plan or the Settlement Agreement, all distributions under this Plan shall be made by the applicable Reorganized Debtor or the Disbursing Agent on and after the Effective Date as provided herein. The Plan Administrator may, in his discretion, serve as the Disbursing Agent and neither the Plan Administrator, the Reorganized Debtor or any Disbursing Agent shall be required to give any bond or surety or other security for the performance of its duties.

6.6.    *Delivery of Distribution.*

Except as otherwise provided in the Plan or the Settlement Agreement, the Disbursing Agent, subject to Bankruptcy Rule 9010, will make all distributions or payments to any holder of an Allowed Claim as and when required by this Plan at: (i) the address of such holder on the books and records of the Reorganized Debtors or their agents; or (ii) at the address in any written notice of address change delivered to the Reorganized Debtors or the applicable Disbursing Agent, including any addresses included on any filed proofs of Claim or transfers of Claim filed pursuant to Bankruptcy Rule 3001 (provided that such transfer of Claim is docketed by the Bankruptcy Court on or before twenty-one (21) days prior to the Distribution Record Date). In the event that any distribution to any holder is returned as undeliverable, no distribution or payment to such holder shall be made unless and until the applicable Disbursing Agent has been notified of the then current address of such holder, at which time or as soon as reasonably practicable thereafter such distribution shall be made to such holder without interest, <u>provided, however,</u> such distributions or payments shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of ninety days from the relevant Distribution Date. Any such undeliverable distribution shall be made available for distribution to the holders of the remaining Allowed Claims and no

further payments shall be made to the holder of an Allowed Claim on account of such undeliverable distribution.

6.7.    *Unclaimed Property*.

Holders of Allowed Claims shall have 120 days from the date of any Plan Distribution check to negotiate such checks. To the extent such checks are not negotiated within such time period, the payment on such applicable checks shall be stopped and the corresponding funds shall be made available for distribution to the remaining holders of Allowed Claims, as applicable, no further payments shall be made to the holder of an Allowed Claim on account of such unclaimed property and such Claim shall be treated as though such Claim has been disallowed. The Debtors and the Disbursing Agent shall have no obligation to attempt to locate any holder of an Allowed Claim other than by reviewing the Debtors' books and records, proofs of Claim filed against the Debtors or transfers of Claim filed pursuant to Bankruptcy Rule 3001 (provided that such transfer of Claim is docketed by the Bankruptcy Court on or before twenty-one (21) days prior to the Distribution Record Date) or as provided in the Settlement Agreement with respect to Settling Secured Creditors.

6.8.    *Reserve Accounts*.

On or as soon as practicable after the Effective Date, the Reorganized Debtors may establish and maintain separate reserve accounts for Disputed Claims against each Debtor if such Claims were to become Allowed Claims.

6.9.    *Satisfaction of Claims and Interests*.

Unless otherwise provided in the Plan, any distributions and deliveries to be made on account of Allowed Claims hereunder shall be in complete settlement, satisfaction and discharge of such Allowed Claims.

6.10.    *Manner of Payment Under Plan*.

Except as specifically provided in the Plan, at the option of the Reorganized Debtors, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

6.11.    *Fractional Cents*.

Notwithstanding any other provision of the Plan to the contrary, no payment of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

6.12.    *No Distribution in Excess of Amount of Allowed Claim*.

Notwithstanding anything to the contrary in the Plan, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a Plan Distribution in excess of the Allowed amount of such Claim.

6.13.    *Setoffs and Recoupments*.

Each Reorganized Debtor may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off and/or recoup against any Allowed Claim (other than an

{00303527-2}

33

Allowed Claim of Settling Secured Creditors), and the distributions to be made pursuant to this Plan on account of such Allowed Claim, any and all claims, rights and Causes of Action that a Reorganized Debtor or its successors may hold against the holder of such Allowed Claim after the Effective Date; provided, however, that neither the failure to effect a setoff or recoupment nor the allowance of any Claim hereunder will constitute a waiver or release by a Debtor, Reorganized Debtor, or any successor of any and all claims, rights and Causes of Action that a Debtor, Reorganized Debtors or any successor may possess against such holder.

6.14.    *Rights and Powers of Disbursing Agent.*

(a)    *Powers of Disbursing Agent.* The Disbursing Agent shall be empowered to: (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (ii) make all applicable distributions or payments contemplated hereby; (iii) employ professionals to represent it with respect to its responsibilities, and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court (including any order issued after the Effective Date), pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

(b)    *Expenses Incurred on or After the Effective Date.* Except as otherwise provided in the Plan, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including, without limitation, taxes) and any reasonable compensation and expense reimbursement claims (including, without limitation, reasonable attorney and other professional fees and expenses) made by the Disbursing Agent shall constitute Wind Down Costs and shall be paid in Cash from proceeds available for such expenses pursuant to the Plan without notice or hearing or any order of the Bankruptcy Court.

6.15.    *Withholding and Reporting Requirements.*

In connection with this Plan and all distributions hereunder, the Reorganized Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Plan Distributions hereunder shall be subject to any such withholding and reporting requirements. The Reorganized Debtors shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including, without limitation, liquidating a portion of any Plan Distribution to generate sufficient funds to pay applicable withholding taxes or establishing any other mechanisms the Reorganized Debtors or the Disbursing Agent believe are reasonable and appropriate, including requiring a holder of a Claim or Interest to submit appropriate tax and withholding certifications. Notwithstanding any other provision of this Plan: (i) each holder of an Allowed Claim that is to receive a distribution under this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations on account of such distribution; and (ii) no Plan Distributions shall be required to be made to or on behalf of such holder pursuant to this Plan if, after 120 days from the date of transmission of a written request to the holder of an Allowed Claim, the Debtors do not receive a valid, completed IRS form from such holder of an Allowed Claim, which is otherwise required for reporting purposes, and such holder shall be treated as if their

Claims had been disallowed.

## ARTICLE VII.

## PROCEDURES FOR RESOLVING CLAIMS

7.1.     *Objections to Claims.*

Other than with respect to Fee Claims, only the Reorganized Debtors shall be entitled to object to Claims after the Effective Date. Any objections to those Claims (other than Administrative Expense Claims), shall be filed on or before the later of: (i) one-hundred twenty (120) days after the Effective Date; and (ii) such later date as may be fixed by the Bankruptcy Court upon *ex parte* motion of the Reorganized Debtors, whether fixed before or after the date specified in clause (i) hereof. Any Claims filed after the Bar Date shall be deemed disallowed and expunged in their entirety without further order of the Bankruptcy Court. Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the claimant if the objecting party effects service in any of the following manners: (i) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (ii) by first class mail, postage prepaid, on the signatory on the proof of claim; or (iii) on any counsel that has appeared on the claimant's behalf in the Bankruptcy Cases (so long as such appearance has not been subsequently withdrawn). From and after the Effective Date, the Reorganized Debtors may settle or compromise any Disputed Claim without need for notice or approval of the Bankruptcy Court.

7.2.     *Disputed Claims.*

(a)     *No Distributions or Payments Pending Allowance.* Except as provided in Section 7.3, Disputed Claims shall not be entitled to any Plan Distributions unless and until such Claims become Allowed Claims.

(b)     *Plan Distributions to Holders of Subsequently Allowed Claims.* On each Distribution Date (or such earlier date as determined by the Reorganized Debtors or the Disbursing Agent in their sole discretion but subject to Section 7.3), the Disbursing Agent will make distributions or payments: (i) on account of any Disputed Claim that has become an Allowed Claim since the occurrence of the previous Distribution Date; and (ii) on account of previously Allowed Claims of property that would have been distributed or paid to the holders of such Claims on the dates distributions previously were made to holders of Allowed Claims in such Class had the Disputed Claims that have become Allowed Claims been Allowed on such dates. The Disbursing Agent shall distribute in respect of such newly Allowed Claims the Plan Consideration as to which holders of such Claims would have been entitled under this Plan if such newly Allowed Claims and were fully or partially Allowed, as the case may be, on the Effective Date, less direct and actual expenses, fees, or other direct costs of maintaining Plan Consideration on account of such Disputed Claims.

(c)     *Distribution of Reserved Plan Consideration Upon Disallowance.* Except as otherwise provided in this Plan, to the extent any Disputed Claim has become

Disallowed in full or in part (in accordance with the procedures set forth in the Plan), any Plan Consideration held by the Reorganized Debtors on account of, or to pay, such Disputed Claim, including amounts held in any reserve, shall become the sole and exclusive property of the applicable Reorganized Debtor and shall be applied in accordance with the terms of this Plan.

7.3.    *Estimation of Claims.*

For purposes of calculating and making distributions under the Plan, the Reorganized Debtors shall be entitled to estimate, in good faith and with due regard to litigation risks associated with Disputed Claims, the maximum dollar amount of Allowed and Disputed Claims, inclusive of contingent and/or unliquidated Claims in a particular Class. The Reorganized Debtors may request that the Bankruptcy Court estimate any Claim pursuant to section 502(c) of the Bankruptcy Code for purposes of determining the Allowed amount of such Claim regardless of whether any Person has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim for purposes of determining the allowed amount of such Claim at any time. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim for allowance purposes, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the objecting party may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, resolved or withdrawn by any mechanism approved by the Bankruptcy Court.

7.4.    *Directors' and Officers' and Managers' Claims.*

All contingent and unliquidated Claims relating from any obligation of a Debtor to exculpate, indemnify and advance any expenses to any Person serving at any time for one or more of the Debtors as one of its directors or officers (statutory or otherwise) or managers by reason of such Person's service in such capacity, or as a director or officer (statutory or otherwise) or managers of any other corporation or legal entity, for acts or omissions occurring at or prior to the Effective Date, whether asserted or claimed prior to, at or after the Effective Date, to the extent provided in such Debtor's constituent documents, a written agreement with a Debtor, in accordance with any applicable law, or any combination of the foregoing, shall be treated under this Plan as a Claim for $0.00 and the Reorganized Debtors shall have no obligation to reserve any amounts therefor; provided, nothing herein shall effect the right of any such directors or officers (statutory or otherwise) or managers to proceed against any Debtors' insurance policies, insurance proceeds or any insurer thereof nor affect the value of such Claims in respect of same.

7.5.    *No Recourse.*

Notwithstanding that the Allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by this Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed

Claims in the respective Class, no Claim holder shall have recourse against the Disbursing Agent, the Debtors, the Reorganized Debtors, the Plan Administrator, the Purchaser, the Plan Advisory Committee or any of their respective professionals, consultants, officers, directors, employees or members or their successors or assigns, or any of their respective property. However, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Bankruptcy Code, nor shall it modify or limit the ability, if any, of claimants to seek disgorgement to remedy any unequal distribution from parties other than those released under this section. THE ESTIMATION OF CLAIMS AND THE ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.

7.6.    *Expenses Incurred On or After the Effective Date.*

Except as otherwise ordered by the Bankruptcy Court, the reasonable fees and expenses incurred by any Professional Person retained by the Reorganized Debtors or the Disbursing Agent on or after the Effective Date in connection with implementation of this Plan, including without limitation, reconciliation of objection to, and settlement of Claims, shall constitute Wind Down Costs and shall be paid in Cash by the Reorganized Debtors from proceeds available for such payments pursuant to the Plan.

## ARTICLE VIII.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1.    *General Treatment.*

(a)    As of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases of the Debtors shall be deemed to be rejected by the applicable Debtor as of the Effective Date, except for any executory contract or unexpired lease that: (i) previously has been assumed and assigned or assumed pursuant to an order of the Bankruptcy Court; (ii) is designated in an APA as contract to be assumed or assumed and assigned to a Purchaser (such list of contracts to be assumed, the "Schedule of Assumed Contracts and Leases"); or (iii) is the subject of a separate motion to assume or assume and assign or to reject under section 365 of the Bankruptcy Code pending on the Effective Date. For the avoidance of doubt, the Debtors may add any executory contract or unexpired lease (other than any contracts or leases rejected pursuant to the Settlement Agreement) to the Schedule of Assumed Contracts and Leases, thereby providing for the assumption or assumption and assignment of such executory contract or lease pursuant to the terms hereof, or move to reject any executory contract or unexpired lease (including any such contracts or leases on the Schedule of Assumed Contracts or Leases), thereby providing for its rejection pursuant to the terms hereof, at any time prior to the Effective Date. Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assumptions and assignments and rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Listing a contract or lease in the Schedule of Assumed Contracts and Leases or rejecting any contract or lease shall not constitute an admission by the applicable Debtor that the applicable Debtor has any liability thereunder.

(b)    Subject to Section 8.2 of this Plan, entry of the Confirmation Order shall, subject to the occurrence of the Effective Date, constitute: (i) the approval, pursuant to sections

365(a) and 1123(b) of the Bankruptcy Code, of the assumption and/or assumption and assignment of the executory contracts and unexpired leases assumed and/or assigned pursuant to Section 8.1(a) and Section 8.1(b) of this Plan; and (ii) the approval, pursuant to sections 365(a) and 1123(b) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to Section 8.1(a) and Section 8.1(b) of this Plan.

      8.2.    *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

      (a)    *Treatment*: Except as otherwise provided in the Settlement Agreement or Plan, all Claims arising from the rejection of executory contracts or unexpired leases, if any, will be treated as Unsecured Claims. All such Claims shall be discharged on the Effective Date, and shall not be enforceable against the Debtors, the Reorganized Debtors, the Sale Assets, the Purchaser or their respective properties or interests in property (and, for the avoidance of doubt, such rejected contracts and leases shall not constitute Assumed Liabilities).

      (b)    *Deadline: Each Person (other than a Settling Secured Creditor) who is a party to a contract or lease rejected under the Plan must file with the Bankruptcy Court and serve on the Debtors or, if after the Effective Date, on the Reorganized Debtors, no later than the earlier of (i) thirty (30) days after the entry of an order for the rejection of such contract or lease or (ii) thirty (30) days after the Effective Date, a proof of claim for damages alleged to arise from the rejection of the applicable contract or lease or be forever barred from filing a Claim, or sharing in distributions under the Plan, related to such alleged rejection damages.*

      8.3.    *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

      (a)    *Assumption Notice*: The Debtors shall serve a notice (the **"Assumption Notice"**) (which may be part of or included with the Schedule of Assumed Contracts and Leases)on the applicable counterparty of potential, assumption, or assumption and assignment of a executory contracts and unexpired leases that are anticipated to be assumed or assumed and assigned to a Purchaser (the **"Assumed Contracts"**) in connection with the Sale of Sale Assets and the amount, if any, that the Debtors contend is the amount needed to cure any defaults and to pay any pecuniary losses with respect to such Assumed Contracts (the **"Cure Costs");** provided however, if the Debtors identify additional executory contracts and unexpired leases that might be assumed by the Debtors or assumed and assigned to a Purchaser, the Debtors will promptly send a supplemental Assumption Notice to the applicable counterparties to such contract or lease.

      (b)    *Time for Payment of Cure Costs*: Except to the extent otherwise agreed in writing by the Debtors and the non-Debtor party or parties to each such Assumed Contract to be assigned to a Purchaser, the Purchaser (or the Debtors if so specified in the APA) shall cure any monetary defaults arising under each executory contract and lease to be assumed pursuant to the Plan and assigned to the Purchaser pursuant to Section 8.1(a) or Section 8.1(b) of this Plan, in accordance with section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Cost on the later of: (i) the Effective Date or as soon thereafter as is reasonably practicable; and (ii) the date on which the Cure Cost has been resolved (either consensually or through judicial decision at the Cure Dispute Hearing, subject, in any such case, to the terms and conditions of any APA) or as soon thereafter as is reasonably practicable. To the extent an

Assumed Contract is not to be assigned to a Purchaser, the Debtors shall cure monetary defaults on the later of (i) the Effective Date or as soon thereafter as is reasonably practicable; and (ii) the date on which the Cure Cost has been resolved (either consensually or through judicial decision at the Cure Dispute Hearing, subject, in any such case, to the terms and conditions of any APA) or as soon thereafter as is reasonably practicable.

(c) *Objections to Cure Costs: Any party that fails to timely object to the applicable Cure Cost listed on the Assumption Notice by the deadline set forth in the Assumption Notice: (a) shall be forever barred, estopped and enjoined from (x) disputing the Cure Cost relating to any executory contract or unexpired lease set forth in the Assumption Notice, (y) asserting any Claim against the applicable Debtor or the Purchaser or their properties arising under section 365(b)(1) of the Bankruptcy Code other than as set forth on the Assumption Notice; and (b) shall be deemed to have consented to the assumption or the assumption and assignment of such executory contract and unexpired lease and shall be forever barred and estopped from asserting or claiming against the Debtors, the Reorganized Debtors, the Purchaser or any other assignee of the relevant executory contract or unexpired lease that any additional amounts are due or defaults exist, or conditions to assumption or assumption and assignment of such executory contract or unexpired lease must be satisfied (pursuant to section 365(b)(1) of the Bankruptcy Code or otherwise). Any objection relating to the Cure Cost shall specify the Cure Cost proposed by the counterparty to the applicable contract or lease.*

(d) *Cure Dispute Hearing*: In the event of a timely objection (a **"Cure Dispute"**) regarding: (i) any Cure Cost; (ii) the ability of the Debtors or the Purchaser to demonstrate "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under any contract or lease to be assumed; or (iii) any other matter pertaining to the proposed assumption or assumption and assignment, a Hearing will be held by the Bankruptcy Court to consider any such objection (a **"Cure Dispute Hearing"**). The cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made at the time set forth in Section 8.3(b) of this Plan following the entry of a Final Order resolving such Cure Dispute and approving the assumption. To the extent a Cure Dispute relates solely to a Cure Cost, the applicable Debtor may assume or assume and assign the applicable contract or lease prior to the resolution of the Cure Dispute provided that the Purchaser (or the Debtors if such Assumed Contract is not to be assigned to a Purchaser) establishes a reserve containing Cash in an amount sufficient to pay the full amount asserted as cure payment by the non-Debtor party to such contract or lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court). To the extent the Cure Dispute is resolved or determined unfavorably to the applicable Debtor in its judgment, then such contract shall not be assumed under the Plan and the Debtor, or the Reorganized Debtor if after the Effective Date, shall have the right to reject the applicable executory contract or unexpired lease effective as of the Effective Date after such determination at the Cure Hearing.

8.4. *Compensation and Benefit Programs*

To the extent any exist, all employment and severance policies, and all compensation and benefit plans, policies, and programs of the Debtors applicable to their respective employees, retirees and non-employee directors including, without limitation, all

savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans, and life, accidental death and dismemberment insurance plans are treated as executory contracts under the Plan and on the Effective Date and shall be rejected as the Effective Date.

## ARTICLE IX.

## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

9.1.    *Conditions Precedent to Confirmation.*

(a)    Confirmation of this Plan is subject to entry of the Confirmation Order by the Bankruptcy Court in form and substance reasonably acceptable to the Debtors, SCS and the Settling Secured Creditors and which Confirmation Order shall be consistent in all material respects with the Plan Term Sheet and the Settlement Agreement.

9.2.    *Conditions Precedent to the Effective Date.*

The occurrence of the Effective Date is subject to the satisfaction of the following conditions precedent (or conditions subsequent with respect to actions that are to be taken contemporaneously with or immediately upon the occurrence of the Effective Date) any of which may be waived in writing by the Debtors and SCS with the consent of the Settling Secured Creditors:

(a)    The Confirmation Order in form and substance reasonably acceptable to the Debtors, SCS and the Settling Secured Creditors shall have been entered, shall confirm the Plan in its present form (or with such modifications as are acceptable to the Debtors and the Settling Secured Creditors), shall have become a Final Order, and shall not be stayed provided that the Effective Date may occur if the Confirmation Order is not a Final Order at the option of the Debtors with the consent of the Settling Secured Creditors;

(b)    The Plan Documents shall have been executed and delivered, and any conditions (other than the occurrence of the Effective Date or certification by a Debtor that the Effective Date has occurred) contained therein shall have been satisfied or waived in accordance therewith;

(c)    All material governmental, regulatory and third party approvals, authorizations, certifications, rulings, no-action letters, opinions, waivers and/or consents in connection with the Plan, if any, have been obtained (unless failure to do so will not have a material adverse effect on the Debtors) and remain in full force and effect, and there exists no claim, action, suit, investigation, litigation or proceeding, pending or threatened in any court or before any arbitrator or governmental instrumentality, which would prohibit the consummation of the Plan;

(d)    The Plan Administrator shall have received from the Sale Proceeds the funds required to make the Distributions set forth in Section 5.3(a) of the Plan;

{00303527-2}                                    40

(e)       The Sale of substantially all of the Sale Assets shall have occurred;

(f)       The Effective Date shall have occurred by September 15, 2010; and

(g)       There shall be no pending request under section 1144 of the Bankruptcy Code for revocation of the Confirmation Order.

9.3.    *Filing Notice of Effective Date.*

Within two (2) Business Days of the occurrence of the Effective Date, the Reorganized Debtors shall file a notice of occurrence of the Effective Date signed by the counsel for the Debtors in Possession and, if different, counsel to the Reorganized Debtors, in the record of the Bankruptcy Court reflecting (a) that the foregoing conditions to the occurrence of the Effective Date have been satisfied or waived by the Debtors and any other person whose consent or waiver is required, (b) the date of the Effective Date, and (c) acknowledging that the Effective Date has occurred on and as of such date.

## ARTICLE X.

## EFFECT OF CONFIRMATION

10.1. *Binding Effect.*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Effective Date, the provisions of this Plan shall bind any holder of a Claim against, or Interest in, the Debtors and inure to the benefit of and be binding on such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under this Plan and whether or not such holder has accepted this Plan.

10.2.   *Vesting of Assets.*

On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, and except as otherwise provided in this Plan or in the Confirmation Order, the Assets shall vest in the applicable Reorganized Debtor, free and clear of all Claims, Liens, encumbrances, charges, and other Interests.

10.3.   *Term of Pre-Confirmation Injunctions or Stays.*

Unless otherwise provided herein, all injunctions or stays arising prior to the Confirmation Date in accordance with sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

10.4.   *Injunction Against Interference With Plan.*

Upon the entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former affiliates,

employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of this Plan.

10.5.  *Injunction.*

(a)     Except as otherwise provided in this Plan, the Settlement Agreement or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against or Interests in the Debtors or the Estates are, with respect to any such Claims or Interests, permanently enjoined after the Confirmation Date from:  commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Reorganized Debtors ,or any of their property, or any direct or indirect transferee of any property of or direct or indirect successor in interest to, any of the foregoing Persons or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including, without limitation, any pre judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtors, the Reorganized Debtors or any of their property, or any direct or indirect transferee of any property of or direct or indirect successor in interest to, any of the foregoing Persons, or any property of any such transferee or successor; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Reorganized Debtors or any of their property, or any direct or indirect transferee of any property of or successor in interest to, any of the foregoing Persons (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; provided, however, that nothing contained herein shall preclude such Persons from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms of this Plan and the Settlement Agreement.

(b)     By accepting distributions pursuant to this Plan, each holder of an Allowed Claim or Interest will be deemed to have specifically consented to the Injunctions set forth in this Section.

10.6.  *Releases.*

(a)     Releases by the Debtors. For good and valuable consideration, the adequacy of which is hereby confirmed, the releases of the Debtors, as debtors-in-possession, on behalf of themselves individually and their respective bankruptcy estates, as set forth in section 16 of the Settlement Agreement shall be effective on the Effective Date, as provided in the Settlement Agreement.

(b)     Releases by Holders of Claims. Except as otherwise provided in this Plan, the Settlement Agreement or the Confirmation Order, on the Effective Date: (i) each holder of a Claim or Interest that voted to accept the Plan; and (ii) to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, all holders of Claims and Interests, in consideration for the obligations of the Debtors under this Plan and the other contracts, instruments, releases, agreements or

documents executed and delivered in connection with this Plan, and each Person (other than the Debtors) that has held, holds or may hold a Claim or Interest, as applicable, will be deemed to have consented to this Plan for all purposes and the restructuring embodied herein and deemed to forever release, waive and discharge all claims, demands, debts, rights, Causes of Action or liabilities (other than the right to enforce the obligations of any party under this Plan and the contracts, instruments, releases, agreements and documents delivered under or in connection with this Plan, including, without limitation, any APA) against the Debtors, their officers, managers, advisors and attorneys in their capacities as such whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Bankrutpcy Cases, the Sale, the transactions contemplated by the Stalking Horse Agreement, this Plan or the Disclosure Statement; provided, however, that the foregoing releases shall not apply to any holder of a Claim or Interest if such holder "opts out" of the releases provided in this Section 10.6 in a timely submitted Ballot.

(c)     Notwithstanding anything to the contrary contained in Section 10.6(b) except to the extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, the releases provided for in this Section 10.6 of the Plan shall not release any non-Debtor entity from any liability arising under (x) the Internal Revenue Code or any state, city or municipal tax code, or (y) any criminal laws of the United States or any state, city or municipality; and (ii) the releases set forth in this Section 10.6 shall not release any (x) Debtor's claims, right, or Causes of Action for money borrowed from or owed to a Debtor or its Subsidiary by any of its directors, officers or former employees, as set forth in such Debtors' or Subsidiary's books and records, (y) claims against any Person to the extent such Person asserts a crossclaim, counterclaim and/or claim for setoff which seeks affirmative relief against a Debtor or any of its officers, directors, or representatives hereof and (z) Person's fraud, gross negligence or willful misconduct, each as determined by a Final Order of the Bankruptcy Court, for matters with respect to the Debtors and their affiliates, except to the extent released in the Settlement Agreement.

(d)     Notwithstanding anything to the contrary contained herein, nothing herein: (i) discharges, releases, or precludes any (a) environmental liability that is not a Claim; (b) environmental claim of the United States that first arises on or after the Confirmation Date, or (c) other environmental claim or liability that is not otherwise dischargeable under the Bankruptcy Code; (ii) releases the Debtors from any environmental liability that a Debtor may have as an owner or operator of real property owned or operated by a Debtor on or after the Confirmation Date; (iii) releases or precludes any environmental liability to the United States on the part of any Person other than the Debtors; or (iv) enjoins the United States from asserting or enforcing any liability described in this paragraph; provided, that the holder of a Claim in respect of any such environmental liability that is an Assumed Liability shall have no recourse against the Debtors, Reorganized Debtors, or the Plan Administrator or any of their property with respect to such Assumed Liability.

(e)     Notwithstanding anything to the contrary in Section 10.6, the provisions of this Section 10.6 are in no manner and shall not be construed to be a limitation of the releases contained in the Settlement Agreement.

10.7.  *Exculpation and Limitation of Liability.*

To the fullest extent permitted by applicable law, neither the Debtors, the Reorganized Debtors, SCS, or the Settling Secured Creditors, or their respective affiliates, officers, advisors, members, employees, or attorneys shall have or incur any liability to any holder of any Claim or Interest or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or affiliates, or any of their successors or assigns, for any act or omission in connection with, or arising out of the Debtors' restructuring, including without limitation, the negotiation, implementation and execution of this Plan, the Bankruptcy 11 Cases, any APA, the Settlement Agreement, the Disclosure Statement, the solicitation of votes for and the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, including, without limitation, all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all prepetition activities leading to the promulgation and confirmation of this Plan except, gross negligence, or willful misconduct, each as determined by a Final Order of the Bankruptcy Court.

10.8.  *Injunction Related to Releases and Exculpation.*

Upon the Effective Date, except as otherwise provided in the Plan and/or the Settlement Agreement, the Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released pursuant to this Plan, including but not limited to the claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released in Sections 10.6 and 10.7 of this Plan. Such injunction shall extend to successors of the Debtors and their respective properties and interests in property.

10.9.  *Retention of Causes of Action/Reservation of Rights.*

Except as expressly provided otherwise in the Plan or in the Settlement Agreement, nothing contained in this Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims or Causes of Action, rights of setoff, or other legal or equitable defenses that the Debtors had immediately prior to the Effective Date on behalf of the Estates or of themselves in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law.

10.10.  *No Successor Liability.*

Except as otherwise expressly provided in the Plan, an APA or Sale Order, no Purchaser shall have any responsibilities for any liabilities or obligations of the Debtors, the Reorganized Debtors, or any other party relating to or arising out of the operations of or Assets of the Debtors, arising prior to the Effective Date. The Purchaser is not, and shall not be deemed to be, a successor to any of the Debtors or Reorganized Debtors by reason of any theory of law or equity, and the Purchaser shall not have any successor or transferee liability of any kind or character, except that the Purchaser shall assume the Assumed Liabilities under the terms and subject to the conditions set forth in the Plan, an APA or Sale Order.

# ARTICLE XI.

## RETENTION OF JURISDICTION

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain, to the fullest extent permitted by applicable law exclusive jurisdiction, pursuant to 28 U.S.C. §§ 1334 and 157 or otherwise, over all matters arising in, arising under, or related to the Bankruptcy Cases for, among other things, the following purposes:

(a)     To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the Cure Disputes resulting therefrom;

(b)     To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(c)     To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense Claim;

(d)     To consider Interests or the allowance, compromise or distributions on account of any Interest.

(e)     To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

(f)     To issue and enforce injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Settlement Agreement, the Confirmation Order, or any other order of the Bankruptcy Court;

(g)     To hear and determine any application to modify this Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)     To hear and determine all Fee Claims;

(i)     To resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

(j)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Settlement Agreement, the Confirmation Order, the APA, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(l)     To take any action and issue such orders, including any such action or orders as may be necessary after occurrence of the Effective Date and/or consummation of the Plan, as may be

necessary to construe, enforce, implement, execute, and consummate this Plan, including any release or injunction provisions set forth herein, or to maintain the integrity of this Plan following consummation;

(m)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(o)     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(p)     To resolve any disputes concerning whether a Person had sufficient notice of the Bankruptcy Cases, the Disclosure Statement Hearing, the Confirmation Hearing, any applicable Bar Date, or the deadline for responding or objecting to a Cure Cost, for the purpose of determining whether a Claim or Interest is discharged hereunder, or for any other purpose;

(q)     To recover any property of the Estates, wherever located;

(r)     To determine any other matter not inconsistent with the Bankruptcy Code; and

(s)     To enter a final decree closing each of the Bankruptcy Cases.

## ARTICLE XII.

## MISCELLANEOUS PROVISIONS

12.1.   *Surrender of Instruments*

Except for the note(s), debenture(s) and other evidence of indebtedness related to the Claims of the Settling Secured Creditors, the Reorganized Debtors may in their discretion require as a condition to participation under this Plan, that the holder of a note, debenture or other evidence of indebtedness of the Debtors that desires to receive the property to be distributed on account of an Allowed Claim based on such note, debenture or other evidence of indebtedness shall surrender such note, debenture or other evidence of indebtedness to the Reorganized Debtors, or their designee (unless such holder's Claim will be reinstated by this Plan, in which case such surrender shall not be required), and shall execute and deliver such other documents as are necessary to effectuate this Plan; provided, however, that if a claimant is a holder of an equity security, note, debenture or other evidence of indebtedness for which no physical certificate was issued to the holder but which instead is held in book-entry form then the Reorganized Debtors or the indenture trustee for such equity security, note, debenture or other evidence of indebtedness shall waive the requirement of surrender. Except as otherwise provided in this section, if no required surrender of a security, note, debenture or other evidence of indebtedness occurs and a claimant does not provide an affidavit and indemnification agreement, in form and substance satisfactory to the Reorganized Debtors, that such security, note, debenture or other evidence of indebtedness was lost, then no distribution may be made to any claimant whose Claim or Interest is based on such security, note, debenture or other evidence of indebtedness thereof.

12.2.    *Exemption from Certain Transfer Taxes.*

To the fullest extent permitted by applicable law, all sale transactions consummated by the Debtors or the Reorganized Debtors including the transfers effectuated under this Plan, the sale by the Debtors or Reorganized Debtors of any Assets or Sale Assets pursuant to section 363(b) of the Bankruptcy Code or this Plan, and any assumption, assignment, and/or sale by the Debtors of their interests in unexpired leases of non-residential real property or executory contracts pursuant to section 365(a) of the Bankruptcy Code, shall constitute a "transfer under a plan" within the purview of section 1146 of the Bankruptcy Code, and shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

12.3.    *Retiree Benefits.*

On and after the Effective Date, pursuant to section 1129(a)(13) of the Bankruptcy Code, payments in respect of retiree benefits (within the meaning of, and subject to the limitations of, section 1114 of the Bankruptcy Code), if any, at the level established in accordance with section 1114 of the Bankruptcy Code, at any time prior to the Confirmation Date, shall be continued for the duration of the period for which the Debtors had obligated themselves to provide such benefits. Nothing herein shall: (i) restrict Purchaser's right to modify the terms and conditions of the retiree benefits, if any, as otherwise permitted pursuant to the terms of the applicable plans, non-bankruptcy law, or section 1114(m) of the Bankruptcy Code; or (ii) be construed as an admission that any such retiree benefits are owed by the Debtors.

12.4.    *Dissolution of Creditors' Committee.*

Any Creditors' Committee shall be automatically dissolved on the later of: (i) the Effective Date; and (ii) the conclusion of any appeals with respect to the Confirmation Order (but such functions shall relate solely to services performed related to such appeal), and the Creditors' Committee shall be deemed dissolved as of such date except with respect to the review and prosecution of Fee Claims and any objections thereto. Following the Effective Date, the attorneys and financial advisors, if any, to the Creditors' Committee shall be entitled to assert any reasonable claims for compensation for services rendered or reimbursement for expenses incurred after the Effective Date in connection with the pursuit of their own Fee Claims or the representation of the Creditors' Committee in connection with the review of and the right to be heard in connection with all Fee Claims. Except as otherwise provided in this Section 12.4, on the Effective Date, all members, employees or agents of the Creditors' Committee shall be released and discharged from all rights and duties arising from, or related to, the Bankruptcy Cases.

12.5.    *Amendments.*

(a)    *Plan Modifications.* This Plan may be amended, modified, or supplemented by the Debtors, with the consent of SCS and the Settling Secured Creditors, which consent shall not be unreasonably withheld in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as otherwise ordered by the Bankruptcy Court. In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to this Plan, the Debtors may, with the consent of SCS and the Settling Secured Creditors, which consent shall not be unreasonably withheld, remedy any defect or omission or reconcile any inconsistencies in this Plan, the Plan Documents and/or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of this Plan, and

any holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented.

(b)    *Other Amendments.* Prior to the Effective Date, the Debtors may make, with the consent of SCS and the Settling Secured Creditors which consent shall not be unreasonably withheld, appropriate technical adjustments and modifications to this Plan without further order or approval of the Bankruptcy Court; <u>provided, however,</u> that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Interests under the Plan.

12.6.    *Revocation or Withdrawal of this Plan.*

Subject to the provisions of the Plan Support Agreement, the Debtors reserve the right to revoke or withdraw this Plan prior to the Effective Date. If the Debtors revoke or withdraw this Plan prior to the Effective Date as to any or all of the Debtors, or if confirmation or the Effective Date as to any or all of the Debtors does not occur, then, with respect to such Debtors: (a) this Plan shall be null and void in all respects; (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), assumption or rejection of executory contracts or leases affected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void; and (c) nothing contained in this Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, such Debtors or any other Person, (ii) prejudice in any manner the rights of such Debtors or any other Person or (iii) constitute an admission of any sort by the Debtors or any other Person.

12.7.    *Allocation of Plan Distributions Between Principal and Interest.*

To the extent that any Allowed Claim entitled to a distribution under the Plan consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to such other amounts.

12.8.    *Severability.*

If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors with the consent of SCS and the Settling Secured Creditors which consent shall not be unreasonably withheld, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.9. *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent a Plan Document or exhibit or schedule to the Plan provides otherwise, the rights, duties, and obligations arising under this Plan and the Plan Documents shall be governed by, and construed and enforced in accordance with, the laws of the State of Louisiana, without giving effect to the principles of conflict of laws thereof.

12.10. *Section 1125(e) of the Bankruptcy Code.*

The Debtors have, and upon confirmation of this Plan shall be deemed to have, solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and the Debtors (and their affiliates, agents, directors, managers, officers, employees, advisors, and attorneys) have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, and purchase of any securities offered and sold under this Plan, and therefore are not, and on account of such offer, issuance, sale, solicitation, and/or purchase will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or offer, issuance, sale, or purchase of the securities offered and sold under this Plan.

12.11. *Inconsistency.*

In the event of any inconsistency among the Plan, the Disclosure Statement, the Plan Documents, any exhibit to the Plan or any other instrument or document created or executed pursuant to the Plan, the provisions of the Plan shall govern.

12.12. *Successors and Assigns.*

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of the heirs, executors, administrators, successors and/or assigns of such Person.

12.13. *Time.*

In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

12.14. *Exhibits.*

All exhibits to this Plan are incorporated and are a part of this Plan as if set forth in full herein.

12.15. *Notices.*

In order to be effective, all notices, requests, and demands to or upon the Reorganized Debtors from and after the Effective Date shall be in writing (including by email or facsimile transmission) and, unless otherwise provided herein, shall be deemed to have been duly given or

made only when actually delivered or, in the case of notice by email or facsimile transmission, when received and confirmed, addressed as follows:

> First Mesa Tankships, LLC
> Dos Raven Tankships, LLC
> Keet Seel Tankships, LLC
> c/o Plan Administrator
> [TO BE PROVIDED]
>
>
> -and-
>
> HELLER DRAPER HAYDEN PATRICK & HORN, LLC
> Tax I.D. #72-1421930
> Attn: Douglas S. Draper, Esq.
> ddraper@hellerdraper.com
> 650 Poydras Street – 25th Floor
> New Orleans, LA  70130
> Telephone:  (504) 299-3300
> Facsimile:  (504) 299-3399
> Counsel to the Debtors and Debtors in Possession

12.16. *Reservation of Rights.*

Except as expressly set forth herein, the Plan shall have no force or effect until the Effective Date. Neither the filing of this Plan, or any statement or provision contained herein, or the taking of any action by the Debtors with respect to this Plan, shall be or shall be deemed to be, an admission or waiver of any rights of the Debtors with respect to any Claims or Interests prior to the Effective Date.

[The remainder of this page is intentionally left blank.]

Dated May 7, 2010

*/s/ Richard D. Horner, Sr.*
_____
First Mesa Tankships, LLC
By:    Richard D. Horner, Sr.
       Manager


*/s/ Richard D. Horner, Sr.*
_____
Dos Raven Tankships, LLC
By:    Richard D. Horner, Sr.
       Manager


*/s/ Richard D. Horner, Sr.*
_____
Keet Seel Tankships, LLC
By:    Richard D. Horner, Sr.
       Manager

HELLER DRAPER HAYDEN PATRICK & HORN, LLC

*/s/ Douglas S. Draper*

Douglas S. Draper (Bar No. 5073)
William H. Patrick (Bar No. 10359)
Tristan Manthey (Bar No. 24539)
650 Poydras Street – Suite 2500
New Orleans, LA  70130
(504) 299-3300