# EXHIBIT "B" TO JOINT CHAPTER 11 PLAN OF REORGANIZATION FOR FIRST MESA TANKSHIPS, LLC, KEET SEEL TANKSHIPS, LLC AND DOS RAVEN TANKSHIPS, LLC DATED AS OF MAY 7, 2010

*Execution Version*

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (*"Agreement"*) is made and entered into this 19th day of April, 2010 by and among First Mesa Tankships, LLC, Dos Raven Tankships, LLC, and Keet Seel Tankships, LLC (hereinafter each individually a *"Debtor"* and collectively the *"Debtors"*), individually and as debtors-in-possession; Ship Construction Strategies, Inc. (*"SCS"*); Shell Trading (U.S.) Company (*"STUSCO"*); Atlantic Marine Alabama, LLC (*"AMA"*); Jamestown Metal Marine Sales, Inc. (*"Jamestown"*); Houma Industries, LLC of Georgia (*"Houma"*); VT Halter Marine, Inc. (*"VT Halter"*); Conrad Industries, Inc. and Conrad Shipyard LLC (collectively *"Conrad"*), Beacon Maritime, Inc. (*"Beacon"*), Top Coat, Inc. (*"Top Coat"*), and Havard's Construction, LLC (*"Havard"*) (STUSCO, AMA, Jamestown, Houma, VT Halter, Conrad, Beacon, Top Coat, and Havard collectively the *"Secured Creditors"*). Debtors, SCS, STUSCO, AMA, Jamestown, Houma, VT Halter, Conrad, Beacon, Top Coat, and Havard shall hereinafter sometimes be referred to individually as a *"Party"* or collectively as the *"Parties."*

## RECITALS

WHEREAS, on December 2, 2009 (the *"Petition Date"*), First Mesa Tankships, LLC, Dos Raven Tankships, LLC, and Keet Seel Tankships, LLC each filed a voluntary petition in the United States Bankruptcy Court for the Eastern District of Louisiana (the *"Bankruptcy Court"*) for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code, and such petitions were consolidated for joint administration as Case No. 09-13964 (JAB), Section "B," (Jointly Administered) (the *"Bankruptcy Cases"*);

WHEREAS, prior to the Petition Date, the Debtors entered into transactions with STUSCO whereby each Debtor was obligated to design, construct, integrate, commission, and deliver a 49,000-DWT double-hulled "Jones Act" products tanker (documented under the laws of the United States of America with a coastwise endorsement) for long-term time charter by STUSCO, and in connection with these transactions, the Debtors entered into contracts with each of AMA, Jamestown, Houma, VT Halter, Conrad, Beacon, Top Coat, and Havard for the fabrication of modules and/or the provision of equipment or systems to be ultimately assembled and integrated into the form of three individual tankers (the *"Vessel Construction Project"*);

WHEREAS, AHL Shipping Company (*"AHL"*) and SCS were retained by each Debtor to serve jointly as the construction manager for the Vessel Construction Project;

WHEREAS, AHL granted to each Debtor a limited, nonexclusive vessel construction license, in the form of that certain Vessel Construction License dated July 2, 2007, by and between AHL and Dos Raven Tankships, LLC, that certain Vessel Construction License dated July 2, 2007, by and between AHL and Keet Seel Tankships, LLC, and that certain Vessel Construction License dated July 2, 2007, by and between AHL and First Mesa Tankships, LLC (collectively the *"Vessel Construction Licenses"*);

WHEREAS, each Debtor holds or asserts title in and/or has possession of property in the form of the respective "Jones Act" products tanker under construction for the Debtor's account prior to the Petition Date, and any and all engines, modules, components, equipment, goods,

*Execution Version*

inventory, tools, raw materials, machinery and work in progress constructed, manufactured, produced or delivered in connection with the Vessel Construction Project or to be constructed, manufactured, produced or delivered in connection with the Vessel Construction Project, in each case in any form whatsoever, including whether or not completed, finished, provided or delivered in connection with the Vessel Construction Project; all rights or assertion of rights of each Debtor to receive proceeds of any insurance, indemnity, warranty or guaranty with respect to the Vessel Construction Project; claims of each Debtor for damages arising out of or for breach of or default under any contract related to the Vessel Construction Project; and all books and records of each Debtor pertaining to the Vessel Construction Project (all of this property, collectively, to be identified in an inventory list agreed upon by the Debtors and the Secured Creditors prior to the filing of the Plan (as defined hereinafter), the *"Sale Assets"*);

WHEREAS, each Secured Creditor claims that it has superior right, title, and/or interests in certain of the Sale Assets and/or first-priority enforceable liens in and against certain of the Sale Assets;

WHEREAS, on November 18, 2009, AMA filed suit in the 281st Judicial Court of Harris County, Texas, case number 2009-72419 (the *"AMA Texas State Suit"*), against First Mesa Tankships, LLC, Dos Raven Tankships, LLC, Keet Seel Tankships, LLC, and AHL, asserting, *inter alia*, title to and/or first-priority lien rights against certain Sale Assets in AMA's possession;

WHEREAS, on November 30, 2009, Houma filed suit in the Circuit Court of Mobile County, Alabama, case number CV-2009-902287 (the *"Houma Alabama State Suit"*), against Dos Raven Tankships, LLC, and AMA, asserting, *inter alia*, rights, liens, and privileges against a power module integrated into the partially completed hull form of the first tanker under construction;

WHEREAS, on December 2, 2009, Houma filed suit in the United States District Court of the Eastern District of Louisiana, case number 09-cv-07494 (the *"Houma Federal Suit"*), against First Mesa Tankships, LLC, Dos Raven Tankships, LLC, Keet Seel Tankships, LLC, and AHL, asserting, *inter alia*, rights, liens, and privileges against certain property of the Debtors;

WHEREAS, on December 9, 2009, AMA filed an adversary proceeding in the Bankruptcy Court, adversary case number 09-01176 (the *"AMA Adversary Proceeding"*), against First Mesa Tankships, LLC, Dos Raven Tankships, LLC, and Keet Seel Tankships, LLC, asserting, *inter alia*, title to and/or first-priority lien rights against certain Sale Assets in AMA's possession;

WHEREAS, on January 19, 2010, the Debtors scheduled unsecured nonpriority claims of SCS totaling in excess of $67,579.05 (collectively with any other claims SCS may have against the Debtors, the *"SCS Claims"*);

WHEREAS, on January 22, 2010, Conrad filed a Proof of Claim against First Mesa Tankships (Claim No. 4) (collectively with any Conrad claims the Debtors scheduled, and any other claims Conrad may have against the Debtors, the *"Conrad Claims"*) asserting claims

*Execution Version*

against the Debtors in the Bankruptcy Cases, with such amounts totaling in excess of $677,865.00;

WHEREAS, on January 27, 2010, the Bankruptcy Court entered a Stipulation and Order authorizing the employment of Compass Maritime Services LLC (the *"Broker"*) to market certain of the Sale Assets, and recognizing that each of STUSCO, AMA, Jamestown, Houma, Conrad, Beacon, Top Coat, and Havard assert that it has superior right, title, and/or interests in certain of the Sale Assets and/or first-priority enforceable liens in and against certain of the Sale Assets;

WHEREAS, on February 10, 2010, Houma filed a Proof of Claim against each of First Mesa Tankships, LLC, Dos Raven Tankships, LLC, and Keet Seel Tankships, LLC (Claim Nos. 5, 6 and 4, respectively) (collectively with the Houma Alabama State Suit, the Houma Federal Suit, the Houma Adversary Proceeding, any Houma claims the Debtors scheduled, and any other claims Houma may have against the Debtors, the *"Houma Claims"*) asserting claims against the Debtors in the Bankruptcy Cases, with such amounts totaling in excess of $5,049,870.69;

WHEREAS, on February 12, 2010, Houma filed an adversary proceeding in the Bankruptcy Court, adversary case number 10-01018 (the *"Houma Adversary Proceeding"*), against First Mesa Tankships, LLC, Dos Raven Tankships, LLC, and Keet Seel Tankships, LLC, asserting, *inter alia*, title to and first-priority lien rights against certain Sale Assets in Houma's possession;

WHEREAS, on February 12, 2010, Havard filed a Proof of Claim against each of First Mesa Tankships, LLC and Dos Raven Tankships, LLC (Claim No. 8) (collectively with any Havard claims the Debtors scheduled, and any other claims Havard may have against the Debtors, the *"Havard Claims"*) asserting claims against the Debtors in the Bankruptcy Cases, with such amounts totaling in excess of $91,594.57;

WHEREAS, on February 23, 2010, STUSCO filed a Proof of Claim against each of First Mesa Tankships, LLC, Dos Raven Tankships, LLC, and Keet Seel Tankships, LLC (Claim Nos. 13, 10 and 8, respectively) (collectively with any STUSCO claims the Debtors scheduled, and any other claims STUSCO may have against the Debtors (the *"STUSCO Claims"*) asserting its security interests in all of the Sale Assets, and its claims against the Debtors in the Bankruptcy Cases based upon amounts owed by the Debtors to STUSCO under or related to three respective agreements to charter and other transaction documents, with such amounts totaling in excess of $368,000,000;

WHEREAS, STUSCO asserts that it is both itself a secured party and subrogated to, and the holder of, all rights and claims of the Vessel Construction Project's lenders and The Royal Bank of Scotland PLC, as administrative agent (collectively hereinafter *"RBS"*), against AHL Products Tankers, LLC (*"AHLPT"*) and the Debtors, in each case, under that certain Collateral Trust Agreement by and among each Debtor, RBS, STUSCO, and Wilmington Trust Company, as collateral trustee, dated July 2, 2007, and the other related financing documents; additionally, STUSCO maintains that it is a co-insured party under various insurance policies obtained for the benefit of the Debtors, both in its own right and as a successor to the rights of RBS;

*Execution Version*

WHEREAS, on February 23, 2010, VT Halter filed a Proof of Claim against each of First Mesa Tankships, LLC and Keet Seel Tankships, LLC (Claim Nos. 15 and 9, respectively) (collectively with any VT Halter claims the Debtors scheduled, and any other claims VT Halter may have against the Debtors, the *"VT Halter Claims"*) asserting claims against the Debtors in the Bankruptcy Cases, with such amounts totaling in excess of $1,565,258.00;

WHEREAS, on February 24, 2010, AMA timely filed a Proof of Claim against each of First Mesa Tankships, LLC, Dos Raven Tankships, LLC, and Keet Seel Tankships, LLC (Claim Nos. 25, 16 and 17, respectively) (collectively with the AMA Texas State Suit, the AMA Adversary Proceeding, any AMA claims the Debtors scheduled, and any other claims AMA may have against the Debtors, the *"AMA Claims"*) asserting claims against the Debtors in the Bankruptcy Cases that in the aggregate exceed $74,692,105;

WHEREAS, on February 24, 2010, Jamestown filed a Proof of Claim against each of First Mesa Tankships, LLC, Dos Raven Tankships, LLC, and Keet Seel Tankships, LLC (Claim Nos. 20, 12 and 12, respectively) (collectively with any Jamestown claims the Debtors scheduled, and any other claims Jamestown may have against the Debtors, the *"Jamestown Claims"*) asserting claims against the Debtors in the Bankruptcy Cases based upon superior first priority interest in the superstructure modules, post-petition suspension, maintenance and preservation costs and all rights under applicable law, with such amounts totaling in excess of $8,080,657.23, which is net of the pre-Petition Date drawdowns by Jamestown against the Jamestown Letters of Credit (as defined herein);

WHEREAS, on February 24, 2010, Beacon filed a Proof of Claim against each of First Mesa Tankships, LLC and Keet Seel Tankships, LLC (Claim Nos. 23 and 15, respectively) (collectively with any Beacon claims the Debtors scheduled, and any other claims Beacon may have against the Debtors, the *"Beacon Claims"*) asserting claims against the Debtors in the Bankruptcy Cases, with such amounts totaling in excess of $279,598.69;

WHEREAS, on February 24, 2010, Top Coat filed a Proof of Claim against each of First Mesa Tankships, LLC and Dos Raven Tankships, LLC (Claim Nos. 27 and 17, respectively), in addition to the Proof of Claim Top Coat filed against each of First Mesa Tankships, LLC and Keet Seel Tankships, LLC on December 16, 2009 (Claim Nos. 1 and 2, respectively) and the Proof of Claim Top Coat filed against Dos Raven Tankships, LLC on December 18, 2009 (Claim No. 2) (collectively with any Top Coat claims the Debtors scheduled, and any other claims Top Coat may have against the Debtors, the *"Top Coat Claims"*) asserting claims against the Debtors in the Bankruptcy Cases, with such amounts totaling in excess of $1,223,736.80;

WHEREAS, the Debtors and Secured Creditors anticipate that the total amount of the aggregate Claims exceeds the amount of any proceeds that may be realized upon a sale of the Sale Assets;

WHEREAS, the Secured Creditors have negotiated and agreed upon the claim amounts and treatment of the Secured Creditors as reflected in Section II (Treatment of Classes of Claims and Interests) of that certain Plan Term Sheet, dated April 19, 2010, by and among the Parties (as may be amended from time to time with the consent of the Parties) (the *"Plan Term Sheet"*) and the waterfall schedule attached hereto as *Exhibit A* (the *"Waterfall"*);

*Execution Version*

WHEREAS, the Parties are conscious of the costs and risks of litigation and, therefore desire, subject to the approval of the Bankruptcy Court, to resolve all matters in dispute or potentially in dispute by and among them concerning the competing STUSCO Claims, AMA Claims, Jamestown Claims, Houma Claims, VT Halter Claims, Conrad Claims, Beacon Claims, Top Coat Claims, Havard Claims, and SCS Claims (collectively the *"Claims"*);

WHEREAS, the Parties have engaged in good faith negotiations regarding the terms of this Agreement that, among other things, provides for the resolution of various claims regarding the Sale Assets and the Vessel Construction Project;

WHEREAS, the Debtors have engaged in good faith negotiations with the other Parties regarding the terms of a joint plan of reorganization pursuant to chapter 11 of the United States Bankruptcy Code, which terms are set forth more fully in the Plan Term Sheet and that will provide for the approval and implementation of this Agreement;

WHEREAS, each Party has reviewed or has had the opportunity to review the Plan Term Sheet, and each Party consents to the terms of the Plan Term Sheet;

WHEREAS, the Debtors and the other Parties have agreed to work together to complete the negotiation of the terms of a joint liquidating chapter 11 plan that is consistent with this Agreement and the Plan Term Sheet and that seeks to implement the resolutions contemplated therein (the *"Plan"*) and to facilitate confirmation and consummation of the Plan and approval and implementation of this Agreement; and

WHEREAS, the Parties desire to settle all issues that arise from or relate to the Bankruptcy Cases, the Claims, and the Vessel Construction Project;

NOW, THEREFORE, in consideration of the respective covenants and agreements contained herein, and for other good and valuable consideration, the receipt, adequacy, and sufficiency of which is hereby acknowledged, the Parties, each for itself and its successors and permitted assigns, hereby agree as follows:

## AGREEMENT AND RELEASE

1.    <u>Effective Date</u>.  This Agreement shall become effective and binding upon the Parties hereto as of the date that the Plan becomes effective (the *"Effective Date"*).

2.    <u>Settlement</u>.

a.    <u>Settlement Process</u>:  This settlement will be accomplished, subject to Bankruptcy Court approval, through a sale of the Sale Assets (except for those certain Sale Assets expressly excluded herein) pursuant to Section 363 of the United States Bankruptcy Code or otherwise, and the distribution of proceeds resulting from such sale pursuant to the agreed Waterfall; *provided, however*, that on or after September 30, 2010, and upon written notice from any Secured Creditor, the Secured Creditors shall cause a meeting of their respective authorized representatives and, by a vote of at least two-thirds (2/3) of the Secured Creditors (including at least one of either STUSCO or AMA), agree to modify the ongoing sale activities, subject to Bankruptcy Court approval, for the sale of the Sale Assets.

b.      Settlement Funding.    The Secured Creditors hereby acknowledge and agree that the funding for the payments to be made to each Secured Creditor under the Waterfall shall come from the distributions that would otherwise be payable to the Secured Creditors under (i) the priority distribution provisions of the United States Bankruptcy Code and/or (ii) as approved by the Bankruptcy Court in a plan of reorganization or otherwise.  For the avoidance of doubt, except as to the STUSCO Insurance/Indemnity Rights (defined below), the Secured Creditors agree to pool distributions that each would receive in the Bankruptcy Cases and to distribute such distributions as provided by the Waterfall.  Notwithstanding the foregoing, the Secured Creditors also acknowledge and agree that the fees due and payable to the Broker resulting from any sales of the Sale Assets and any administrative costs, wind-down costs, and/or priority claims that must be paid in order for a plan of reorganization acceptable to the Secured Creditors to be confirmed, shall be paid and satisfied first from the proceeds of any sales of the Sale Assets before funds are distributed to the Secured Creditors for further distribution pursuant to the Waterfall; *provided, however*, that to the extent that no plan of reorganization acceptable to the Secured Creditors has been confirmed and gone effective by September 15, 2010, or such later date as may be agreed upon by the Debtors and Secured Creditors, then the provisions of this Section 2(b) regarding the payment of administrative and priority claims shall no longer be operable.  The Secured Creditors hereby further agree that any proceeds realized by or through all rights or asserted rights of each Debtor to receive proceeds of any insurance, indemnity, warranty or guaranty with respect to the Vessel Construction Project and related to or arising from an event occurring prior to the Petition Date, and/or claims of each Debtor for damages arising out of or for breach of default prior to the Petition Date under any contract related to the Vessel Construction Project to the extent such claims are not released herein (such rights and claims together, the *"STUSCO Insurance/Indemnity Rights"*) shall be excluded from the Waterfall and shall be payable first and only to STUSCO.

3.      Settlement Payment.    Except as set forth in Section 2 above with respect to STUSCO, the total distribution amount that each of STUSCO, AMA, Jamestown, Houma, VT Halter, Conrad, Beacon, Top Coat, and Havard receive under the Waterfall shall constitute that respective Party's full and final payment in settlement of its respective Claims.  The Debtors shall, pursuant to any order of the Bankruptcy Court which shall provide for payments to any of the Secured Creditors as prescribed herein pursuant to the Waterfall or applicable plan confirmation order, make distribution payments to the Secured Creditors, pursuant to the Waterfall, within thirty (30) days of receiving proceeds from the sale of any Sale Assets (the *"Distribution Proceeds"*).  Notwithstanding anything herein to the contrary, upon the receipt by Debtors of Distribution Proceeds in the amount of One Hundred Thousand Dollars ($100,000.00) or more, whether from any one or more sales of Sale Assets, Debtors shall make distribution payments to the Secured Creditors, pursuant to the Waterfall, within five (5) days of receipt of such Distribution Proceeds.

4.      Dismissal of Suits.

a.      AMA:  Upon the Effective Date (as defined herein at Section 7(a)), AMA shall take all necessary actions to cause the dismissal, with prejudice, of the AMA Texas State Suit and the AMA Adversary Proceeding as to the Debtors.

*Execution Version*

      b.    <u>Houma</u>:  Upon the Effective Date, Houma shall take all necessary actions to cause the dismissal, with prejudice, of the Houma Alabama State Suit, the Houma Federal Suit, and the Houma Adversary Proceeding as to the Debtors.

     5.    <u>Conditions Precedent</u>.  The occurrence of (a) the Effective Date and (b) bankruptcy court approval of this Agreement, on or before September 15, 2010, or such later date as may be agreed upon by the Debtors and the Secured Creditors, are conditions precedent to the effectiveness of this Agreement.  In the event that the Effective Date and/or bankruptcy court approval of this Agreement does not occur on or before September 15, 2010, or such later date as may be agreed, then this Agreement shall be null and void without prejudice to the Parties' rights.  Each Party hereby agrees to use its best efforts to obtain approval of this Agreement by the Bankruptcy Court in the Bankruptcy Cases.  The order entered by the Bankruptcy Court approving this Agreement (the *"Bankruptcy Court Order"*) must be in form and content reasonably satisfactory to each of the Parties to this Agreement.

     6.    <u>Rejection of Executory Contracts</u>.  Each Debtor shall take all necessary actions to reject all executory contracts and/or unexpired leases entered into by and between each such Debtor with the Secured Creditors and/or SCS, with all such rejections to be effective as of the Effective Date.  Each of the Secured Creditors and SCS hereby agrees not to oppose the rejection of all such contracts and/or unexpired leases.  Any claims for damages incurred by each respective Party as a result of the rejection of any of its executory contracts and/or unexpired leases with each Debtor shall be included as claims released herein this Agreement by each respective Party and settled fully and finally by the total distribution amount that each Party receives under the Waterfall.

     7.    <u>The STUSCO Release</u>:  STUSCO executes the following release in favor of the other Secured Creditors, the Debtors, SCS, and each of their respective agents, attorneys, insurers, assigns, predecessors, successors, parents, subsidiaries, affiliates, shareholders, officers, directors and employees (other than AHL, AHLPT, and each of their respective agents, attorneys, insurers, assigns, predecessors, successors, parents, shareholders, officers, directors, and employees in such capacity, it being understood and acknowledged that no release is herein provided to AHL, AHLPT, or such related parties) (the *"STUSCO Released Parties"*):

      a.    This Release is made and executed by STUSCO, and will become effective as of the Effective Date.  For and in consideration of the terms of this Agreement, STUSCO, acting for itself, its predecessors, assigns, agents, attorneys, insurers, successors, subsidiaries, affiliates, shareholders, officers, directors and employees, does hereby compromise, settle, and fully release and forever discharge the STUSCO Released Parties of and from any and all claims, demands, actions, or causes of action which STUSCO had, or may now, or may in the future have, own, or hold for relief, compensation, damages, losses, or remedy of any kind or character that arise from or relate to the Bankruptcy Cases, the Claims, or the Vessel Construction Project; *provided, however,* that none of the STUSCO Released Parties are released from the obligations contained in this Agreement or in any instruments, agreements and other documents that may be executed and delivered in connection with the settlement made contemporaneously herewith.

*Execution Version*

b.    STUSCO represents and warrants that it is the sole owner and/or holder (whether by individual ownership or by way of subrogation to, and the holder of, all rights and claims of RBS) of the claims, demands, actions, or causes of action which are the subject of this Release, that such claims have not been assigned, encumbered or transferred, and that STUSCO has unqualified authority, by the signatory immediately below, to release the same.

c.    STUSCO represents and warrants that its execution of this Release effects a full, complete and final settlement, satisfaction and extinguishment of all claims, demands, actions, or causes of action owned or asserted, or which could have been asserted by STUSCO against the STUSCO Released Parties that arise from or relate to the Bankruptcy Cases, the Claims, or the Vessel Construction Project; *provided, however,* that none of the STUSCO Released Parties are released from the obligations contained in this Agreement or in any instruments, agreements and other documents that may be executed and delivered in connection with the settlement made contemporaneously herewith.

d.    In entering into and executing this Agreement, STUSCO has not relied upon any statement or representation pertaining to this matter made by any representative, agent or employee of the STUSCO Released Parties, or any person, firm, organization or corporation hereby released, or by any person or persons representing them; but STUSCO has relied upon attorneys of its own independent choosing and has determined this Agreement is in its best interest.

8.1    The AMA Release:  AMA executes the following release in favor of the other Secured Creditors, the Debtors, SCS, and each of their respective agents, attorneys, insurers, assigns, predecessors, successors, parents, subsidiaries, affiliates, shareholders, officers, directors and employees (other than AHL, AHLPT, and each of their respective agents, attorneys, insurers, assigns, predecessors, successors, parents, shareholders, officers, directors, and employees in such capacity, it being understood and acknowledged that no release is herein provided to AHL, AHLPT, or such related parties) (the *"AMA Released Parties"*):

a.    This Release is made and executed by AMA, and will become effective as of the Effective Date.  For and in consideration of the terms of this Agreement, AMA, acting for itself, its predecessors, assigns, agents, attorneys, insurers, successors, subsidiaries, affiliates, shareholders, officers, directors and employees, does hereby compromise, settle, and fully release and forever discharge the AMA Released Parties of and from any and all claims, demands, actions, or causes of action which AMA had, or may now, or may in the future have, own, or hold for relief, compensation, damages, losses, or remedy of any kind or character that arise from or relate to the Bankruptcy Cases, the Claims, or the Vessel Construction Project; *provided, however,* that none of the AMA Released Parties are released from the obligations contained in this Agreement or in any instruments, agreements and other documents that may be executed and delivered in connection with the settlement made contemporaneously herewith.

b.    AMA represents and warrants that it is the sole owner of the claims, demands, actions, or causes of action which are the subject of this Release, that such claims have not been assigned, encumbered or transferred, and that AMA has unqualified authority, by the signatory immediately below, to release the same.  AMA further represents and warrants that its

*Execution Version*

affiliate, Atlantic Marine Florida, LLC, does not assert any liens in or against or ownership of any of the Sale Assets.

      c.     AMA represents and warrants that its execution of this Release effects a full, complete and final settlement, satisfaction and extinguishment of all claims, demands, actions, or causes of action owned or asserted, or which could have been asserted by AMA against the AMA Released Parties that arise from or relate to the Bankruptcy Cases, the Claims, or the Vessel Construction Project; *provided, however,* that none of the AMA Released Parties are released from the obligations contained in this Agreement or in any instruments, agreements and other documents that may be executed and delivered in connection with the settlement made contemporaneously herewith.

      d.     Subject to the occurrence of the Effective Date, with respect to that certain Irrevocable Standby Letter of Credit No. T404799, dated June 5, 2009, and in the amount of $3,000,000 (the *"AMA Letter of Credit"*), AMA agrees to take all reasonable and necessary actions, including but not limited to countersigning a duly completed statement in the form of Appendix 4 to the AMA Letter of Credit, to reduce the Credit Amount (as such term is defined in the AMA Letter of Credit) to zero. AMA hereby represents and warrants to STUSCO that AMA has not made any draws against the AMA Letter of Credit since the Petition Date, and AMA further represents and warrants to STUSCO that AMA will not make any draws against the AMA Letter of Credit, or any other letter of credit to which AMA is a beneficiary and that is related to the Vessel Construction Project, after the date of this Agreement.

      e.     In entering into and executing this Agreement, AMA has not relied upon any statement or representation pertaining to this matter made by any representative, agent or employee of the AMA Released Parties, or any person, firm, organization or corporation hereby released, or by any person or persons representing them; but AMA has relied upon attorneys of its own independent choosing and has determined this Agreement is in its best interest.

    8.2    <u>AMA's Consent to Sale of the AMA Owned Assets and Waterfall Settlement:</u>

      a.     Notwithstanding the Recitals herein this Agreement, AMA asserts continuing ownership of certain modules, components, equipment, goods, inventory, tools, materials, and work-in-progress related to the Vessel Construction Project and located at AMA's facilities in Mobile, Alabama and Jacksonville, Florida (the *"AMA Owned Assets"*). Nothing under this Agreement or otherwise shall be construed as an admission by AMA that AMA is not the owner of the AMA Owned Assets, or that any Debtor has a present ownership interest therein.

      b.     Notwithstanding <u>Section 8.2(a)</u> above, AMA hereby agrees and consents to the sale of, and AMA hereby authorizes the Debtors to sell, the AMA Owned Assets that comprise or are a part of any Sale Assets, with such agreement, consent, and authorization conditioned upon and subject to AMA receiving its distribution payment as prescribed herein, pursuant to the Waterfall, of any Distribution Proceeds resulting from the sale of such AMA Owned Assets.

9.    <u>The Jamestown Release</u>: Jamestown executes the following release in favor of the other Secured Creditors, the Debtors, SCS, and each of their respective agents, attorneys, insurers, assigns, predecessors, successors, parents, subsidiaries, affiliates, shareholders, officers, directors and employees (other than AHL, AHLPT, and each of their respective agents, attorneys, insurers, assigns, predecessors, successors, parents, shareholders, officers, directors, and employees in such capacity, it being understood and acknowledged that no release is herein provided to AHL, AHLPT, or such related parties) (the *"Jamestown Released Parties"*):

a.    This Release is made and executed by Jamestown, and will become effective as of the Effective Date. For and in consideration of the terms of this Agreement, Jamestown, acting for itself, its predecessors, assigns, agents, attorneys, insurers, successors, subsidiaries, affiliates, shareholders, officers, directors and employees, does hereby compromise, settle, and fully release and forever discharge the Jamestown Released Parties of and from any and all claims, demands, actions, or causes of action which Jamestown had, or may now, or may in the future have, own, or hold for relief, compensation, damages, losses, or remedy of any kind or character that arise from or relate to the Bankruptcy Cases, the Claims, or the Vessel Construction Project; *provided, however*, that none of the Jamestown Released Parties are released from the obligations contained in this Agreement or in any instruments, agreements and other documents that may be executed and delivered in connection with the settlement made contemporaneously herewith.

b.    Jamestown represents and warrants that it is the sole owner of the claims, demands, actions, or causes of action which are the subject of this Release, that such claims have not been assigned, encumbered or transferred, and that Jamestown has unqualified authority, by the signatory immediately below, to release the same.

c.    Jamestown represents and warrants that its execution of this Release effects a full, complete and final settlement, satisfaction and extinguishment of all claims, demands, actions, or causes of action owned or asserted, or which could have been asserted by Jamestown against the Jamestown Released Parties that arise from or relate to the Bankruptcy Cases, the Claims, or the Vessel Construction Project; *provided, however*, that none of the Jamestown Released Parties are released from the obligations contained in this Agreement or in any instruments, agreements and other documents that may be executed and delivered in connection with the settlement made contemporaneously herewith.

d.    With respect to that certain Irrevocable Standby Letter of Credit No. T402643, dated December 21, 2007, and in the amount of $1,500,000; that certain Irrevocable Standby Letter of Credit No. T402648, dated December 21, 2007, and in the amount of $1,500,000; and that certain Irrevocable Standby Letter of Credit No. T402644, dated December 21, 2007, and in the amount of $1,500,000 (collectively the *"Jamestown Letters of Credit"*), Jamestown hereby represents and warrants to STUSCO that Jamestown has drawn the full amounts under each of the Jamestown Letters of Credit and that Jamestown has applied those respective draw amounts against amounts due and payable by the Debtors to Jamestown, thereby reducing, on a net basis, the total amount of the Jamestown Claims.

e.    In entering into and executing this Agreement, Jamestown has not relied upon any statement or representation pertaining to this matter made by any representative, agent

*Execution Version*

or employee of the Jamestown Released Parties, or any person, firm, organization or corporation hereby released, or by any person or persons representing them; but Jamestown has relied upon attorneys of its own independent choosing and has determined this Agreement is in its best interest.

10.1    <u>The Houma Release</u>: Houma executes the following release in favor of the other Secured Creditors, the Debtors, SCS, and each of their respective agents, attorneys, insurers, assigns, predecessors, successors, parents, subsidiaries, affiliates, shareholders, officers, directors and employees (other than AHL, AHLPT, and each of their respective agents, attorneys, insurers, assigns, predecessors, successors, parents, shareholders, officers, directors, and employees in such capacity, it being understood and acknowledged that no release is herein provided to AHL, AHLPT, or such related parties) (the *"Houma Released Parties"*):

a.    This Release is made and executed by Houma, and will become effective as of the Effective Date. For and in consideration of the terms of this Agreement, Houma, acting for itself, its predecessors, assigns, agents, attorneys, insurers, successors, subsidiaries, affiliates, shareholders, officers, directors and employees, does hereby compromise, settle, and fully release and forever discharge the Houma Released Parties of and from any and all claims, demands, actions, or causes of action which Houma had, or may now, or may in the future have, own, or hold for relief, compensation, damages, losses, or remedy of any kind or character that arise from or relate to the Bankruptcy Cases, the Claims, or the Vessel Construction Project; *provided, however*, that none of the Houma Released Parties are released from the obligations contained in this Agreement or in any instruments, agreements and other documents that may be executed and delivered in connection with the settlement made contemporaneously herewith.

b.    Houma represents and warrants that it is the sole owner of the claims, demands, actions, or causes of action which are the subject of this Release, that such claims have not been assigned, encumbered or transferred, and that Houma has unqualified authority, by the signatory immediately below, to release the same.

c.    Houma represents and warrants that its execution of this Release effects a full, complete and final settlement, satisfaction and extinguishment of all claims, demands, actions, or causes of action owned or asserted, or which could have been asserted by Houma against the Houma Released Parties that arise from or relate to the Bankruptcy Cases, the Claims, or the Vessel Construction Project; *provided, however*, that none of the Houma Released Parties are released from the obligations contained in this Agreement or in any instruments, agreements and other documents that may be executed and delivered in connection with the settlement made contemporaneously herewith.

d.    In entering into and executing this Agreement, Houma has not relied upon any statement or representation pertaining to this matter made by any representative, agent or employee of the Houma Released Parties, or any person, firm, organization or corporation hereby released, or by any person or persons representing them; but Houma has relied upon attorneys of its own independent choosing and has determined this Agreement is in its best interest.

10.2    <u>Houma's Consent to Sale of the Houma Owned Assets and Waterfall Settlement</u>:

*Execution Version*

a.    Notwithstanding the Recitals herein this Agreement, Houma asserts continuing ownership of certain modules, components, equipment, goods, inventory, tools, materials, and work-in-progress related to the Vessel Construction Project and located at Houma's facility in Harvey, Louisiana (the *"Houma Owned Assets"*).  Nothing under this Agreement or otherwise shall be construed as an admission by Houma that Houma is not the owner of the Houma Owned Assets, or that any Debtor has a present ownership interest therein.

b.    Notwithstanding Section 10.2(a) above, Houma hereby agrees and consents to the sale of, and Houma hereby authorizes the Debtors to sell, the Houma Owned Assets that comprise or are a part of any Sale Assets, with such agreement, consent, and authorization conditioned upon and subject to Houma receiving its distribution payments as prescribed herein, pursuant to the Waterfall, of any Distribution Proceeds resulting from the sale of such Houma Owned Assets.

11.    The VT Halter Release: VT Halter executes the following release in favor of the other Secured Creditors, the Debtors, SCS, and each of their respective agents, attorneys, insurers, assigns, predecessors, successors, parents, subsidiaries, affiliates, shareholders, officers, directors and employees (other than AHL, AHLPT, and each of their respective agents, attorneys, insurers, assigns, predecessors, successors, parents, shareholders, officers, directors, and employees in such capacity, it being understood and acknowledged that no release is herein provided to AHL, AHLPT, or such related parties) (the *"VT Halter Released Parties"*):

a.    This Release is made and executed by VT Halter, and will become effective as of the Effective Date.  For and in consideration of the terms of this Agreement, VT Halter, acting for itself, its predecessors, assigns, agents, attorneys, insurers, successors, subsidiaries, affiliates, shareholders, officers, directors and employees, does hereby compromise, settle, and fully release and forever discharge the VT Halter Released Parties of and from any and all claims, demands, actions, or causes of action which VT Halter had, or may now, or may in the future have, own, or hold for relief, compensation, damages, losses, or remedy of any kind or character that arise from or relate to the Bankruptcy Cases, the Claims, or the Vessel Construction Project; *provided, however*, that none of the VT Halter Released Parties are released from the obligations contained in this Agreement or in any instruments, agreements and other documents that may be executed and delivered in connection with the settlement made contemporaneously herewith.

b.    VT Halter represents and warrants that it is the sole owner of the claims, demands, actions, or causes of action which are the subject of this Release, that such claims have not been assigned, encumbered or transferred, and that VT Halter has unqualified authority, by the signatory immediately below, to release the same.

c.    VT Halter represents and warrants that its execution of this Release effects a full, complete and final settlement, satisfaction and extinguishment of all claims, demands, actions, or causes of action owned or asserted, or which could have been asserted by VT Halter against the VT Halter Released Parties that arise from or relate to the Bankruptcy Cases, the Claims, or the Vessel Construction Project; *provided, however*, that none of the VT Halter Released Parties are released from the obligations contained in this Agreement or in any

*Execution Version*

instruments, agreements and other documents that may be executed and delivered in connection with the settlement made contemporaneously herewith.

      d.    In entering into and executing this Agreement, VT Halter has not relied upon any statement or representation pertaining to this matter made by any representative, agent or employee of the VT Halter Released Parties, or any person, firm, organization or corporation hereby released, or by any person or persons representing them; but VT Halter has relied upon attorneys of its own independent choosing and has determined this Agreement is in its best interest.

      12.    <u>The Conrad Release</u>: Conrad executes the following release in favor of the other Secured Creditors, the Debtors, SCS, and each of their respective agents, attorneys, insurers, assigns, predecessors, successors, parents, subsidiaries, affiliates, shareholders, officers, directors and employees (other than AHL, AHLPT, and each of their respective agents, attorneys, insurers, assigns, predecessors, successors, parents, shareholders, officers, directors, and employees in such capacity, it being understood and acknowledged that no release is herein provided to AHL, AHLPT, or such related parties) (the ***"Conrad Released Parties"***):

      a.    This Release is made and executed by Conrad, and will become effective as of the Effective Date. For and in consideration of the terms of this Agreement, Conrad, acting for itself, its predecessors, assigns, agents, attorneys, insurers, successors, subsidiaries, affiliates, shareholders, officers, directors and employees, does hereby compromise, settle, and fully release and forever discharge the Conrad Released Parties of and from any and all claims, demands, actions, or causes of action which Conrad had, or may now, or may in the future have, own, or hold for relief, compensation, damages, losses, or remedy of any kind or character that arise from or relate to the Bankruptcy Cases, the Claims, or the Vessel Construction Project; *provided, however*, that none of the Conrad Released Parties are released from the obligations contained in this Agreement or in any instruments, agreements and other documents that may be executed and delivered in connection with the settlement made contemporaneously herewith.

      b.    Conrad represents and warrants that it is the sole owner of the claims, demands, actions, or causes of action which are the subject of this Release, that such claims have not been assigned, encumbered or transferred, and that Conrad has unqualified authority, by the signatory immediately below, to release the same.

      c.    Conrad represents and warrants that its execution of this Release effects a full, complete and final settlement, satisfaction and extinguishment of all claims, demands, actions, or causes of action owned or asserted, or which could have been asserted by Conrad against the Conrad Released Parties that arise from or relate to the Bankruptcy Cases, the Claims, or the Vessel Construction Project; *provided, however*, that none of the Conrad Released Parties are released from the obligations contained in this Agreement or in any instruments, agreements and other documents that may be executed and delivered in connection with the settlement made contemporaneously herewith.

      d.    In entering into and executing this Agreement, Conrad has not relied upon any statement or representation pertaining to this matter made by any representative, agent or employee of the Conrad Released Parties, or any person, firm, organization or corporation

*Execution Version*

hereby released, or by any person or persons representing them; but Conrad has relied upon attorneys of its own independent choosing and has determined this Agreement is in its best interest.

13.    The Beacon Release: Beacon executes the following release in favor of the other Secured Creditors, the Debtors, SCS, and each of their respective agents, attorneys, insurers, assigns, predecessors, successors, parents, subsidiaries, affiliates, shareholders, officers, directors and employees (other than AHL, AHLPT, and each of their respective agents, attorneys, insurers, assigns, predecessors, successors, parents, shareholders, officers, directors, and employees in such capacity, it being understood and acknowledged that no release is herein provided to AHL, AHLPT, or such related parties) (the ***"Beacon Released Parties"***):

a.    This Release is made and executed by Beacon, and will become effective as of the Effective Date. For and in consideration of the terms of this Agreement, Beacon, acting for itself, its predecessors, assigns, agents, attorneys, insurers, successors, subsidiaries, affiliates, shareholders, officers, directors and employees, does hereby compromise, settle, and fully release and forever discharge the Beacon Released Parties of and from any and all claims, demands, actions, or causes of action which Beacon had, or may now, or may in the future have, own, or hold for relief, compensation, damages, losses, or remedy of any kind or character that arise from or relate to the Bankruptcy Cases, the Claims, or the Vessel Construction Project; *provided, however*, that none of the Beacon Released Parties are released from the obligations contained in this Agreement or in any instruments, agreements and other documents that may be executed and delivered in connection with the settlement made contemporaneously herewith.

b.    Beacon represents and warrants that it is the sole owner of the claims, demands, actions, or causes of action which are the subject of this Release, that such claims have not been assigned, encumbered or transferred, and that Beacon has unqualified authority, by the signatory immediately below, to release the same.

c.    Beacon represents and warrants that its execution of this Release effects a full, complete and final settlement, satisfaction and extinguishment of all claims, demands, actions, or causes of action owned or asserted, or which could have been asserted by Beacon against the Beacon Released Parties that arise from or relate to the Bankruptcy Cases, the Claims, or the Vessel Construction Project; *provided, however*, that none of the Beacon Released Parties are released from the obligations contained in this Agreement or in any instruments, agreements and other documents that may be executed and delivered in connection with the settlement made contemporaneously herewith.

d.    In entering into and executing this Agreement, Beacon has not relied upon any statement or representation pertaining to this matter made by any representative, agent or employee of the Beacon Released Parties, or any person, firm, organization or corporation hereby released, or by any person or persons representing them; but Beacon has relied upon attorneys of its own independent choosing and has determined this Agreement is in its best interest.

14.1    The Top Coat Release: Top Coat executes the following release in favor of the other Secured Creditors, the Debtors, SCS, and each of their respective agents, attorneys,

*Execution Version*

insurers, assigns, predecessors, successors, parents, subsidiaries, affiliates, shareholders, officers, directors and employees (other than AHL, AHLPT, and each of their respective agents, attorneys, insurers, assigns, predecessors, successors, parents, shareholders, officers, directors, and employees in such capacity, it being understood and acknowledged that no release is herein provided to AHL, AHLPT, or such related parties) (the ***"Top Coat Released Parties"***):

      a.    This Release is made and executed by Top Coat, and will become effective as of the Effective Date. For and in consideration of the terms of this Agreement, Top Coat, acting for itself, its predecessors, assigns, agents, attorneys, insurers, successors, subsidiaries, affiliates, shareholders, officers, directors and employees, does hereby compromise, settle, and fully release and forever discharge the Top Coat Released Parties of and from any and all claims, demands, actions, or causes of action which Top Coat had, or may now, or may in the future have, own, or hold for relief, compensation, damages, losses, or remedy of any kind or character that arise from or relate to the Bankruptcy Cases, the Claims, or the Vessel Construction Project; *provided, however*, that none of the Top Coat Released Parties are released from the obligations contained in this Agreement or in any instruments, agreements and other documents that may be executed and delivered in connection with the settlement made contemporaneously herewith.

      b.    Top Coat represents and warrants that it is the sole owner of the claims, demands, actions, or causes of action which are the subject of this Release, that such claims have not been assigned, encumbered or transferred, and that Top Coat has unqualified authority, by the signatory immediately below, to release the same.

      c.    Top Coat represents and warrants that its execution of this Release effects a full, complete and final settlement, satisfaction and extinguishment of all claims, demands, actions, or causes of action owned or asserted, or which could have been asserted by Top Coat against the Top Coat Released Parties that arise from or relate to the Bankruptcy Cases, the Claims, or the Vessel Construction Project; *provided, however*, that none of the Top Coat Released Parties are released from the obligations contained in this Agreement or in any instruments, agreements and other documents that may be executed and delivered in connection with the settlement made contemporaneously herewith.

      d.    In entering into and executing this Agreement, Top Coat has not relied upon any statement or representation pertaining to this matter made by any representative, agent or employee of the Top Coat Released Parties, or any person, firm, organization or corporation hereby released, or by any person or persons representing them; but Top Coat has relied upon attorneys of its own independent choosing and has determined this Agreement is in its best interest.

     14.2   <u>Top Coat's Consent to Sale of the Top Coat Owned Assets and Waterfall Settlement</u>:

      a.    Notwithstanding the Recitals herein this Agreement, Top Coat asserts continuing ownership of certain modules, components, equipment, goods, inventory, tools, materials, and work-in-progress related to the Vessel Construction Project and located at Top Coat's facility in Freeport, Texas (the ***"Top Coat Owned Assets"***). Nothing under this

Agreement or otherwise shall be construed as an admission by Top Coat that Top Coat is not the owner of the Top Coat Owned Assets, or that any Debtor has a present ownership interest therein.

b.      Notwithstanding <u>Section 14.2(a)</u> above, Top Coat hereby agrees and consents to the sale of, and Top Coat hereby authorizes the Debtors to sell, the Top Coat Owned Assets that comprise or are a part of any Sale Assets, with such agreement, consent, and authorization conditioned upon and subject to Top Coat receiving its distribution payments as prescribed herein, pursuant to the Waterfall, of any Distribution Proceeds resulting from the sale of such Top Coat Owned Assets.

15.      <u>The Havard Release</u>:  Havard executes the following release in favor of the other Secured Creditors, the Debtors, SCS, and each of their respective agents, attorneys, insurers, assigns, predecessors, successors, parents, subsidiaries, affiliates, shareholders, officers, directors and employees (other than AHL, AHLPT, and each of their respective agents, attorneys, insurers, assigns, predecessors, successors, parents, shareholders, officers, directors, and employees in such capacity, it being understood and acknowledged that no release is herein provided to AHL, AHLPT, or such related parties) (the *"Havard Released Parties"*):

a.      This Release is made and executed by Havard, and will become effective as of the Effective Date.  For and in consideration of the terms of this Agreement, Havard, acting for itself, its predecessors, assigns, agents, attorneys, insurers, successors, subsidiaries, affiliates, shareholders, officers, directors and employees, does hereby compromise, settle, and fully release and forever discharge the Havard Released Parties of and from any and all claims, demands, actions, or causes of action which Havard had, or may now, or may in the future have, own, or hold for relief, compensation, damages, losses, or remedy of any kind or character that arise from or relate to the Bankruptcy Cases, the Claims, or the Vessel Construction Project; *provided, however*, that none of the Havard Released Parties are released from the obligations contained in this Agreement or in any instruments, agreements and other documents that may be executed and delivered in connection with the settlement made contemporaneously herewith.

b.      Havard represents and warrants that it is the sole owner of the claims, demands, actions, or causes of action which are the subject of this Release, that such claims have not been assigned, encumbered or transferred, and that Havard has unqualified authority, by the signatory immediately below, to release the same.

c.      Havard represents and warrants that its execution of this Release effects a full, complete and final settlement, satisfaction and extinguishment of all claims, demands, actions, or causes of action owned or asserted, or which could have been asserted by Havard against the Havard Released Parties that arise from or relate to the Bankruptcy Cases, the Claims, or the Vessel Construction Project; *provided, however*, that none of the Havard Released Parties are released from the obligations contained in this Agreement or in any instruments, agreements and other documents that may be executed and delivered in connection with the settlement made contemporaneously herewith.

d.      In entering into and executing this Agreement, Havard has not relied upon any statement or representation pertaining to this matter made by any representative, agent or

employee of the Havard Released Parties, or any person, firm, organization or corporation hereby released, or by any person or persons representing them; but Havard has relied upon attorneys of its own independent choosing and has determined this Agreement is in its best interest.

16.    The Debtors' Release:   The Debtors, as debtors-in-possession, on behalf of themselves individually and their respective bankruptcy estates, each execute the following release in favor of the Secured Creditors, SCS, and each of their respective agents, attorneys, insurers, assigns, predecessors, successors, parents, subsidiaries, affiliates, shareholders, officers, directors and employees (other than AHL, AHLPT, and each of their respective agents, attorneys, insurers, assigns, predecessors, successors, parents, shareholders, officers, directors, and employees in such capacity, it being understood and acknowledged that no release is herein provided to AHL, AHLPT, or such related parties) (the ***"Debtors' Released Parties"***):

a.    This Release is made and executed by each of the Debtors, as debtors-in-possession, on behalf of themselves individually and their respective bankruptcy estates, and will become effective as of the Effective Date.   For and in consideration of the terms of this Agreement, each of the Debtors, as debtors-in-possession, on behalf of themselves individually and their respective bankruptcy estates, and acting for itself, its predecessors, assigns, agents, attorneys, insurers, successors, subsidiaries, affiliates, shareholders, officers, directors and employees, does hereby compromise, settle, and fully release and forever discharge the Debtors' Released Parties of and from any and all claims, demands, actions, or causes of action which each of the Debtors had, or may now, or may in the future have, own, or hold for relief, compensation, damages, losses, or remedy of any kind or character that arise from or relate to the Bankruptcy Cases, the Claims, or the Vessel Construction Project, including but not limited to, any and all avoidance actions under the Bankruptcy Code or otherwise; *provided, however,* that none of the Debtors' Released Parties are released from the obligations contained in this Agreement or in any instruments, agreements and other documents that may be executed and delivered in connection with the settlement made contemporaneously herewith.

b.    Each of the Debtors, as debtors-in-possession, on behalf of themselves individually and their respective bankruptcy estates, represents and warrants that it is the sole owner of the claims, demands, actions, or causes of action which are the subject of this Release, that such claims have not been assigned, encumbered or transferred, and that it has unqualified authority, by the signatory immediately below, to release the same.

c.    Each of the Debtors, as debtors-in-possession, on behalf of themselves individually and their respective bankruptcy estates,  represents and warrants that its execution of this Release effects a full, complete and final settlement, satisfaction and extinguishment of all claims, demands, actions, or causes of action owned or asserted, or which could have been asserted by it against the Debtors' Released Parties that arise from or relate to the Bankruptcy Cases, the Claims, or the Vessel Construction Project, including but not limited to, any and all avoidance actions under the Bankruptcy Code or otherwise; *provided, however*, that none of the Debtors' Released Parties are released from the obligations contained in this Agreement or in any instruments, agreements and other documents that may be executed and delivered in connection with the settlement made contemporaneously herewith.

d.    In entering into and executing this Agreement, each of the Debtors, as debtors-in-possession, on behalf of themselves individually and their respective bankruptcy estates, has not relied upon any statement or representation pertaining to this matter made by any representative, agent or employee of the Debtors' Released Parties, or any person, firm, organization or corporation hereby released, or by any person or persons representing them; but each of the Debtors has relied upon attorneys of its own independent choosing and has determined this Agreement is in its best interest.

17.    <u>The SCS Release</u>:  SCS executes the following release in favor of the Secured Creditors, the Debtors, and each of their respective agents, attorneys, insurers, assigns, predecessors, successors, parents, subsidiaries, affiliates, shareholders, officers, directors and employees (other than AHL, AHLPT, and each of their respective agents, attorneys, insurers, assigns, predecessors, successors, parents, shareholders, officers, directors, and employees in such capacity, it being understood and acknowledged that no release is herein provided to AHL, AHLPT, or such related parties) (the *"SCS Released Parties"*):

a.    This Release is made and executed by SCS and will become effective as of the Effective Date.  For and in consideration of the terms of this Agreement, SCS, acting for itself, its predecessors, assigns, agents, attorneys, insurers, successors, subsidiaries, affiliates, shareholders, officers, directors and employees, does hereby compromise, settle, and fully release and forever discharge the SCS Released Parties of and from any and all claims, demands, actions, or causes of action which SCS had, or may now, or may in the future have, own, or hold for relief, compensation, damages, losses, or remedy of any kind or character that arise from or relate to the Bankruptcy Cases, the Claims, or the Vessel Construction Project; *provided, however*, that none of the SCS Released Parties are released from the obligations contained in this Agreement or in any instruments, agreements and other documents that may be executed and delivered in connection with the settlement made contemporaneously herewith.

b.    SCS represents and warrants that it is the sole owner of the claims, demands, actions, or causes of action which are the subject of this Release, that such claims have not been assigned, encumbered or transferred, and that it has unqualified authority, by the signatory immediately below, to release the same.

c.    SCS  represents and warrants that its execution of this Release effects a full, complete and final settlement, satisfaction and extinguishment of all claims, demands, actions, or causes of action owned or asserted, or which could have been asserted by it against the SCS Released Parties that arise from or relate to the Bankruptcy Cases, the Claims, or the Vessel Construction Project; *provided, however*, that none of the SCS Released Parties are released from the obligations contained in this Agreement or in any instruments, agreements and other documents that may be executed and delivered in connection with the settlement made contemporaneously herewith.

d.    In entering into and executing this Agreement, SCS has not relied upon any statement or representation pertaining to this matter made by any representative, agent or employee of the SCS Released Parties, or any person, firm, organization or corporation hereby released, or by any person or persons representing them; but SCS has relied upon attorneys of its own independent choosing and has determined this Agreement is in its best interest.

18.   <u>Miscellaneous</u>:

a.    Subject, with respect to the Debtors, to Bankruptcy Court approval of this Agreement, each Party represents and warrants that it has full power to execute, deliver and perform this Agreement; this Agreement has been duly authorized, executed and delivered by or on behalf of such Party and constitutes the valid and binding obligation of such Party; and the execution, delivery, and performance of this Agreement will not conflict with or result in a breach of any of the terms, conditions or provisions of any agreement or instrument to which such Party is a party or by which it is bound.

b.    Nothing contained in this Agreement shall be deemed an admission of any kind, whether of guilt, liability, or fact, by or against the Parties or their directors, officers, shareholders, agents, employees, representatives, principals, successors, predecessors, assigns and heirs.  Whether or not this Agreement is consummated or approved, neither this Agreement nor evidence regarding negotiations leading up to it shall be admissible in any action or proceeding for any purpose other than enforcement of this Agreement.

c.    Neither this Agreement nor any terms or provisions hereof may be revoked, amended, modified or changed in any way unless the Bankruptcy Court has approved such revocation, amendment, modification or other change by final order and such revocation, amendment, modification or other change is in writing and duly executed by all Parties against whom enforcement of such revocation, amendment, modification or other change is sought.

d.    Each Secured Creditor shall have the right to assign this Agreement in whole or in part to another Secured Creditor or a third party, such right being exercised by written notice to the Parties; *provided that* any assignee fully accepts the rights, liabilities and obligations of such assigning Secured Creditor in accordance with the terms and conditions of this Agreement and that certain Plan Support Agreement, dated April 19, 2010, by and among the Parties; and *provided further that* any assigning Secured Creditor shall not be relieved of or released from any of its obligations and responsibilities under <u>Sections 18(e) and 18(f)</u> of this Agreement.

e.    Each Secured Creditor agrees that it has a duty to, and shall, preserve and maintain the Sale Assets existing upon its respective premises at its own cost and expense, and without reimbursement or recovery (from the Debtors' respective bankruptcy estates or otherwise) for any such costs and expenses incurred through and until September 30, 2010.  If Sale Assets still exist upon the premises of any Secured Creditor after September 30, 2010 (each a *"Preserving Creditor"*), any other Secured Creditor may, by written notice (each a *"Noticing Creditor"*), require a Preserving Creditor to continue preservation and maintenance of the Sale Assets existing upon its premises, and the Noticing Creditor shall reimburse the Preserving Creditor, on a weekly basis, for all reasonable and documented costs and expenses incurred in connection with such preservation and maintenance.  Notwithstanding anything to the contrary in this Agreement, upon the sale of an Asset preserved and maintained by a Preserving Creditor, the Noticing Creditor shall be paid and satisfied first with the proceeds resulting from such sale, up to and including the total amount of its reimbursement to the Preserving Creditor, before any proceeds are distributed to the Secured Creditors pursuant to the Waterfall.

f.    Each Secured Creditor hereby agrees that it will use its best commercial efforts to co-operate and assist in the process of selling the Sale Assets (except for those certain Sale Assets expressly excluded from the Waterfall, as described at Section 2(b)), including but not limited to, providing information for the data room maintained by the Broker and facilitating visits by prospective buyers to the yards and worksites of the relevant Secured Creditor and/or its respective contractors and subcontractors. Within ten (10) days of the date of this Agreement, each of Jamestown, Houma, VT Halter, Conrad, Beacon, Top Coat, and Havard further hereby agrees to provide to the Broker, for posting in the data room, a reasonable and commercial cost to complete all of its respective work scope as called for by the Vessel Construction Project. AMA hereby agrees to provide to the Broker, within ten (10) days of the date of this Agreement, and for posting in the data room, a reasonable and commercial cost to make water tight and launch Hull 103 (made the subject of that certain Fabrication and Assembly Contract by and between Dos Raven Tankships, LLC and AMA, dated July 2, 2007, as amended). Each of AMA, Jamestown, Houma, VT Halter, Conrad, Beacon, Top Coat, and Havard agrees to warrant its respective workmanship prior to the Petition Date to any buyer(s) of the relevant Sale Assets, with AMA's warranty to be as specifically set forth in a warranty to be posted in the data room. Each of Jamestown, Houma, VT Halter, Conrad, Beacon, Top Coat, and Havard further agrees to undertake and complete all or any part of its respective work scope as called for by the Vessel Construction Project and warrant any respective equipment provided for the Vessel Construction Project prior to the Petition Date to any buyer(s) of the relevant Sale Assets *provided that* each can reach commercially reasonable and agreed terms and conditions with a buyer of the relevant Sale Assets. STUSCO agrees to evaluate any proposals from a buyer of Sale Assets for the charter of a vessel completed by such buyer *provided that* such chartering proposals are based upon commercially reasonable terms and conditions.

g.    The Secured Creditors shall, prior to the date that any bid procedures are filed in the Bankruptcy Cases, cause a meeting of their respective authorized representatives to determine how and to what extent credit bidding may be permitted by any of the Secured Creditors, and each Secured Creditor hereby agrees to use its best efforts to obtain Bankruptcy Court approval of any unanimous determination arising from such meeting.

h.    Each Debtor hereby agrees to use its best efforts to assign, transfer, and/or sub-license its respective Vessel Construction License to any party to whom Sale Assets are transferred.  For the avoidance of any doubt, the Debtors hereby agree that each Vessel Construction License includes the right to use and/or develop all drawings, specifications, plans, other documents and tangible items regarding the design of each respective vessel contemplated by the Vessel Construction Project, including the "Vessel Design/Construction Package" and any "Improvements" and "Developed Data" (as each term is defined in each Vessel Construction License), and processes and methods for constructing and assembling such vessel, and any invention, discovery, modification or enhancement of a product, composition or process, whether patentable or not, whether presently existing or developed later, relating to or regarding the Vessel Construction Project, any component part thereof, or the processes and products associated with each respective vessel that was to be constructed pursuant to the Vessel Construction Project, including any designs, drawings or other materials developed or created by any of Debtors' contractors under any design, fabrication or construction contract relating to any of such vessels or the Vessel Construction Project.

*Execution Version*

i.    Nothing contained in this Agreement shall be construed as precluding SCS from providing services in any capacity to any buyer of any Sale Assets who is proceeding in accordance with the Plan.

j.    All disputes relating to or arising out of the enforcement of this Agreement will be governed by the laws of the State of Louisiana, excluding its choice-of-law rules. The United States Bankruptcy Court for the Eastern District of Louisiana will retain jurisdiction to enforce this Agreement and adjudicate any dispute arising out of or relating to this Agreement, and each Party hereby consents and submits to the exclusive jurisdiction of the Bankruptcy Court with respect to any action seeking enforcement of this Agreement.

k.    Except for the Releases, which are intended to be enforceable by the persons respectively referred to therein, the terms of this Agreement are enforceable only by the Parties, and no other party shall have a separate right, as a third-party beneficiary or otherwise, to enforce any provision of this Agreement or to compel any Party to comply with the terms of this Agreement.

l.    This Agreement shall be binding on the Parties hereto and their respective heirs, successors in interest and assigns, whether by operation of law or otherwise, including any Chapter 7 or Chapter 11 trustee, as applicable, who may be appointed if the Bankruptcy Cases are converted to a liquidation case under Chapter 7 or Chapter 11 of the United States Bankruptcy Code, as applicable, or any successor to the Debtors under any plan of reorganization confirmed in the Bankruptcy Cases.

m.    The Parties hereto shall each bear their own attorneys' fees and other costs incurred in connection with the Bankruptcy Cases, and the negotiation, drafting and consideration of this Agreement and any motion filed for its approval.

n.    If a dispute arises with regard to the interpretation and/or performance of this Agreement or any of its provisions, it is agreed that should a Party sue another Party for a breach of any provision of this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees, expenses, and costs of court.

o.    This Agreement constitutes the entire agreement and understanding of the Parties with respect to the settlement and releases and related transactions contemplated herein. There are no restrictions, promises, representations, warranties, covenants or undertakings between the parties with respect to the transactions contemplated herein, other than those expressly set forth or referred to herein. This Agreement supersedes all prior agreements and understandings, written or oral, between the parties with respect to such transactions.

p.    This Agreement may be executed in as many counterparts as deemed necessary and when so executed shall have the same effect as if the Parties had executed the same instrument.

q.    This Agreement and the Plan Support Agreement are part of a settlement by and among the Parties. This Agreement and the Plan Support Agreement are meant to be co-terminus. To the extent that this Agreement terminates by its terms, the Plan Support Agreement shall be deemed simultaneously terminated as well. To the extent that the Plan Support

*Execution Version*

Agreement terminates by its terms, this Agreement shall be deemed simultaneously terminated as well.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be signed by their respective duly authorized officers or representatives as of the date set forth above.

[signature pages for each Party follow]

*Execution Version*

### FIRST MESA TANKSHIPS, LLC

By: _____

Name:       Richard D. Horner, Sr.
Title:      President
Address:    219 E. Houston Street, Suite 300
            San Antonio, Texas  78205

### DOS RAVEN TANKSHIPS, LLC

By: _____

Name:       Richard D. Horner, Sr.
Title:      President
Address:    219 E. Houston Street, Suite 300
            San Antonio, Texas  78205

### KEET SEEL TANKSHIPS, LLC

By: _____

Name:       Richard D. Horner, Sr.
Title:      President
Address:    219 E. Houston Street, Suite 300
            San Antonio, Texas  78205

[Debtors' Signature Page to Settlement Agreement and Release]

*Execution Version*

**SHIP CONSTRUCTION STRATEGIES, INC.**

By: _____

Name:      Alan Nierenberg
Title:        President
Address:   P. O. Box 130345
               Tampa, Florida 33681

[SCS Signature Page to Settlement Agreement and Release]

*Execution Version*

**SHELL TRADING (U.S.) COMPANY**

By: _____

Name:        John Huser
Title:        Treasurer
Address:    909 Fannin Street, Plaza Level 1
            Houston, Texas   77010

[STUSCO Signature Page to Settlement Agreement and Release]

*Execution Version*

**ATLANTIC MARINE ALABAMA, LLC**

By: _____

Name:        Edward J. Fleming
Title:        President
Address:     P.O. Box 3202
             Main Gate, Dunlap Drive
             Mobile, Alabama   36652

[AMA Signature Page to Settlement Agreement and Release]

*Execution Version*

**JAMESTOWN METAL MARINE SALES, INC.**

By: _____

Name:      Richard Hazard
Title:      President
Address:   4710 NW Boca Raton Boulevard,
           Suite 400
           Boca Raton, Florida  33431

[Jamestown Signature Page to Settlement Agreement and Release]

*Execution Version*

**HOUMA INDUSTRIES, LLC OF GEORGIA**

By: _____

Name:        E.H. Clay, III
Title:         President
Address:     1725 Destrehan Avenue
             Harvey, Louisiana   70058

[Houma Signature Page to Settlement Agreement and Release]

*Execution Version*

**VT HALTER MARINE, INC.**

By: _____

Name:      William Skinner
Title:       CEO
Address:   900 Bayou Casotte Parkway
            P.O. Box 1328
            Pascagoula, Mississippi  34581

[VT Halter Signature Page to Settlement and Release Agreement]

*Execution Version*

**CONRAD INDUSTRIES, INC. and
CONRAD SHIPYARD LLC**

By: _____

Name:        Cecil A. Hernandez
Title:        Secretary and Treasurer
Address:     1501 Front Street
             Morgan City, Louisiana   70380

[Conrad Signature Page to Settlement Agreement and Release]

*Execution Version*

**BEACON MARITIME, INC.**

By: _____

Name:        Elizabeth Jackson
Title:        Vice President - Finance
Address:     P.O. Box 3053
             Orange, Texas   77631

[Beacon Signature Page to Settlement Agreement and Release]

*Execution Version*

**TOP COAT, INC.**

By: _____

Name:        Kenneth Hayes
Title:        President
Address:     P.O. Box 3305
             Freeport, Texas   77542

[Top Coat Signature Page to Settlement Agreement and Release]

*Execution Version*

**HAVARD'S CONSTRUCTION, LLC**

By: _Charles C Havard_

Name:       Charles E. Havard
Title:      Vice President
Address:    5219 Main Street
            Lucedale, Mississippi  39452

[Havard Signature Page to Settlement Agreement and Release]

| EXHIBIT A TO SETTLEMENT AGREEMENT |
|---|

**Exhibit A**
**Waterfall Schedule**

Note: The figures in this exhibit, other than "% of Distribution" and Tier Ranges, are illustrative and presented to demonstrate how the waterfall schedule is intended to determine distributions depending on Asset Sale Proceeds.

**($ Actuals)**

| | |
|---|---|
| Total Asset Sale Proceeds | $150,000,000 |
| Less: Broker Fees | ($3,750,000) |
| Less: DIP Financing | ($400,000) |
| Less: DIP Legal (Drapper/LeBlanc) | ($500,000) |
| **Distributable Recovery** | **$145,350,000** |

**Waterfall of Proceeds:**

**Tier 1:**

| From - To | $0 | $20,000,000 |
|---|---|---|

| Party | % of Distribution | Recovered Per Tier | Total Claim Recovered |
|---|---|---|---|
| STUSCO | 44.26% | $8,851,749 | $8,851,749 |
| AMA | 36.00% | $7,200,000 | $7,200,000 |
| Jamestown | 8.88% | $1,775,000 | $1,775,000 |
| Houma | 6.00% | $1,200,000 | $1,200,000 |
| Top Coat | 1.60% | $319,672 | $319,672 |
| VT Halter | 1.96% | $391,315 | $391,315 |
| Conrad | 0.85% | $169,466 | $169,466 |
| Beacon | 0.35% | $69,900 | $69,900 |
| Havard | 0.11% | $22,899 | $22,899 |
| | 100% | $20,000,000 | $20,000,000 |

| Tier | Recovery % Limit | Total Claim | |
|---|---|---|---|
| 1 | 25.000% | $368,354,217 | STUSCO |
| 2 | 45.000% | $57,356,900 | AMA |
| 3 | 65.000% | $7,100,000 | Jamestown |
| 4 | 75.000% | $4,800,000 | Houma |
| 5 | 90.000% | $1,278,687 | Top Coat |
| | | $1,565,258 | VT Halter |
| | | $677,865 | Conrad |
| | | $279,599 | Beacon |
| | | $91,595 | Havard |
| | | $441,504,121 | Total |

**Tier 2:**

| From - To | $20,000,000.01 | $40,000,000 |
|---|---|---|

| Party | % of Distribution | Recovered Per Tier | Total Claim Recovered |
|---|---|---|---|
| STUSCO | 54.21% | $10,841,399 | $19,693,148 |
| AMA | 30.00% | $6,000,000 | $13,200,000 |
| Jamestown | 7.10% | $1,420,000 | $3,195,000 |
| Houma | 4.80% | $960,000 | $2,160,000 |
| Top Coat | 1.28% | $255,737 | $575,409 |
| VT Halter | 1.57% | $313,052 | $704,366 |
| Conrad | 0.68% | $135,573 | $305,039 |
| Beacon | 0.28% | $55,920 | $125,820 |
| Havard | 0.09% | $18,319 | $41,218 |
| | 100.00% | $20,000,000 | $40,000,000 |

**Tier 3:**

| From - To | $40,000,000.01 | $60,000,000 |
|---|---|---|

| Party | % of Distribution | Recovered Per Tier | Total Claim Recovered |
|---|---|---|---|
| STUSCO | 55.21% | $11,041,399 | $30,734,548 |
| AMA | 29.00% | $5,800,000 | $19,000,000 |
| Jamestown | 7.10% | $1,420,000 | $4,615,000 |
| Houma | 4.80% | $960,000 | $3,120,000 |
| Top Coat | 1.28% | $255,737 | $831,146 |
| VT Halter | 1.57% | $313,052 | $1,017,418 |
| Conrad | 0.68% | $135,573 | $440,612 |
| Beacon | 0.28% | $55,920 | $181,739 |
| Havard | 0.09% | $18,319 | $59,537 |
| | 100.00% | $20,000,000 | $60,000,000 |

**Tier 4:**

| From - To | $60,000,000.01 | $80,000,000 |
|---|---|---|

| Party | % of Distribution | Recovered Per Tier | Total Claim Recovered |
|---|---|---|---|
| STUSCO | 67.10% | $13,420,700 | $44,155,247 |
| AMA | 25.00% | $5,000,000 | $24,000,000 |
| Jamestown | 3.55% | $710,000 | $5,325,000 |
| Houma | 2.40% | $480,000 | $3,600,000 |
| Top Coat | 0.64% | $127,869 | $959,015 |
| VT Halter | 0.78% | $156,526 | $1,173,943 |
| Conrad | 0.34% | $67,786 | $508,399 |
| Beacon | 0.14% | $27,960 | $209,699 |
| Havard | 0.05% | $9,159 | $68,696 |
| | 100.00% | $20,000,000 | $80,000,000 |

**Tier 5:**

| Over | $80,000,000.01 |
|---|---|

| Party | % of Distribution | Recovered Per Tier | Total Claim Recovered |
|---|---|---|---|
| STUSCO | 70.73% | $53,178,549 | $97,333,797 |
| AMA | 15.00% | $9,802,500 | $33,802,500 |
| Jamestown | 6.42% | $1,065,000 | $6,390,000 |
| Houma | 4.34% | $720,000 | $4,320,000 |
| Top Coat | 1.16% | $191,803 | $1,150,818 |
| VT Halter | 1.41% | $234,789 | $1,408,732 |
| Conrad | 0.61% | $101,680 | $610,079 |
| Beacon | 0.25% | $41,940 | $251,639 |
| Havard | 0.08% | $13,739 | $82,436 |
| | 100.00% | $65,350,000 | $145,350,000 |

| Maximum Recovery |
|---|
| $331,518,796 |
| $51,621,210 |
| $6,390,000 |
| $4,320,000 |
| $1,150,818 |
| $1,408,732 |
| $610,079 |
| $251,639 |
| $82,436 |

**CONFIDENTIAL**
**SUBJECT TO FRE 408**